187 N.J. Super. 510 (1983)
455 A.2d 533
A. WILLIAM THOMAS AND VIRGINIA M. THOMAS, HIS WIFE; MARVIN S. FISH AND FRANCINE D. FISH, HIS WIFE; AND BEN J. SLAVITT, PLAINTIFFS,
v.
BARRY L. GARDNER AND NORMA S. GARDNER, HIS WIFE; DAMIAL PROPERTIES, INC., A NEW JERSEY CORPORATION, DEFENDANTS-APPELLANTS,
v.
FIRST NATIONAL STATE BANK OF NORTHWEST JERSEY, A NEW JERSEY BANKING CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 6, 1982.
Decided January 12, 1983.
*512 Before Judges MORTON I. GREENBERG and FURMAN.
Lawrence P. Cohen argued the cause for appellants (Kenihan, Cohen & Kron, attorneys; Lawrence P. Cohen on the brief).
Edward J. Seaver argued the cause for respondent (Podvey, Sachs, Catenacci & Silber, attorneys; Robert L. Podvey on the brief).
The opinion of the court was delivered by FURMAN, J.A.D.
The judgment on appeal before us is the third in a sequence of judgments against appellants Barry and Norma Gardner (Gardners) in favor of respondent First National State Bank of Northwest Jersey (First National). The final two judgments also run against appellant Damial Properties, Inc. (Damial), a corporation wholly owned by the Gardners. Neither the first nor second judgment was appealed.
The initial judgment was a default judgment in favor of First National on a promissory note in the amount of $74,142.45, against the Gardners, Fred Gardner, Barry's brother (Fred), and Irving Weber, Barry's then law partner, and his wife Barbara Weber (Webers), imposing joint and several liability. That judgment was entered on December 1, 1978.
On January 4, 1979, First National instituted a Chancery Division action to set aside a fraudulent conveyance by Fred and in aid of execution against Fred and the Gardners. Next day, First National accepted a 20-year note from the Webers for one-third of the judgment debt of $74,142.45, with interest. *513 Later, during the pendency of the Chancery Division action, by separate settlement Fred executed a 20-year note and second mortgage to First National, also for one-third of the judgment debt of $74,142.45 with interest. First National agreed orally to limit the liability of Fred and the Webers to one-third each of the judgment debt and not to attempt execution upon their property and assets for more than one-third each of the judgment debt if they maintained the schedule of monthly payments on their respective notes.
First National refused the Gardners a similar compromise arrangement. By judgment in the Chancery Division action, entered on July 11, 1979, the Gardners and Damial were ordered to execute an assignment in favor of First National of all their right, title and interest in certain real estate comprising about 92 acres in Independence Township, Warren County, in the full amount of the judgment debt of $74,142.45. The judgment further provided:
IT IS FURTHER ORDERED that in the event that defendants Barry Gardner and Norma Gardner, his wife and Damial Properties, Inc. do not execute the aforesaid assignment within three (3) days of the date of this Order, that this Order shall serve as the instrument of conveyance of the assignment, pursuant to N.J.S.A. 2A:16-7
The Gardners, who were tenants in common of the Independence Township property with plaintiffs in the present litigation, joined with plaintiffs in entering into a contract for its sale on or about October 1, 1980. A title search revealed First National's interest pursuant to the judgment of July 11, 1979. Plaintiffs instituted this action to compel the Gardners, Damial and First National as defendants to execute deeds and other necessary documents in order to comply with the contract of sale. The Webers and Fred are not parties to this action.
First National cross-claimed against the Gardners and Damial for judgment "in the full amount of the net proceeds received from the sale of the property." The Gardners cross-claimed against First National for a judgment directing that First National provide them a pro rata credit of two thirds of the *514 judgment debt of $74,142.45 because of First National's acceptance of notes from Fred and the Webers for one-third each of that debt. Plaintiffs reached settlements with all defendants. Only the cross-claims were tried.
In his oral opinion at the conclusion of the one-day nonjury trial, Judge Stanton ruled that First National was entitled to satisfy the entire amount due under the original default judgment "in accordance with the provisions of the Chancery Division judgment entered on July 11, 1979." To the extent that the judgment under appeal is in aid of execution on the Chancery Division judgment, which was not appealed, it must be affirmed as res judicata. But the judgment entered by Judge Stanton is not limited to the Independence Township property. It permits First National to satisfy the entire judgment of December 1, 1978 "against any and all assets" of the Gardners and Damial, and provides specifically that, if First National collects the entire judgment from the Gardners and Damial, First National must assign to them the Webers' note and Fred's note and mortgage.
The judgment under appeal determines the issue raised in the Gardners' cross-claim: whether First National's acceptance of long-term notes for one-third of the judgment debt from each of the other two joint and several judgment debtors discharged the Gardners pro rata from their several liability for two-thirds of the judgment debt. During the trial no evidence of the amounts of actual payments on their notes by the Webers and Fred was introduced. Judge Stanton's oral opinion reflects, in our view correctly, that the issue before him was the Gardners' liability for the "entire remaining balance" after pro tanto credit to them for actual payments towards the judgment debt by the Webers and Fred.
The Gardners urge that pursuant to N.J.S.A. 2A:55-6, which authorizes individual compromises by joint debtors, their joint and several liability was discharged pro rata upon First National's acceptance of the notes from the Webers and Fred. N.J.S.A. 2A:55-6 provides:

*515 Joint debtors may individually compromise with their creditors for their joint indebtedness in the same manner and with like effect as partners on the dissolution of the partnership may compromise with their creditors as provided by sections 42:5-1 to 42:5-5 of the title Partnerships and Partnership Associations, of the Revised Statutes.
We disagree with the Gardners' contention. N.J.S.A. 2A:55-6 is limited to compromises of joint indebtedness. Neither N.J.S.A. 2A:55-6 nor the Partnership Act sections referred to in N.J.S.A. 2A:55-6 are applicable to joint and several debtors, with the exception of partners upon a co-partner's breach of trust or other wrongful act. The Gardners' obligation was joint and several, not joint only, and arose out of a judgment enforcing a contractual liability, not out of a partnership relationship. A joint and several debtor is not discharged pro rata upon an agreement by the creditor to compromise with a fellow joint and several debtor.
The Gardners also urge that First National should be barred by unclean hands from pursuing recovery against them for more than one-third of the judgment debt of $74,142.45. That contention is legally and factually untenable. First National owed no duty to the Gardners to effect a compromise with them on the same terms as with the Webers and Fred. Judge Stanton reached findings amply supported by credible evidence that First National, knowing of the Gardners' property, was entitled to recover its full judgment "as best it can," according to its business judgment as to the most financially solvent among the debtors; that First National did not intend to limit the Gardners' liability or to discharge them from liability for two-thirds of the judgment debt by its compromises with the Webers and Fred, and that First National gave no release or assurance to the Webers or Fred which precluded its right to satisfy the entire remaining balance due on the judgment from the Gardners. Judge Stanton's conclusions reached in accordance with his fact findings must be sustained on appeal. State v. Johnson, 42 N.J. 146, 164 (1964).
*516 The doctrine of equitable estoppel is likewise inapplicable. The Gardners, if they satisfy more than one-third of the judgment debt of $74,142.45, may seek immediate contribution pro tanto from the Webers or Fred or both, as they were entitled to before the execution of the notes to First National by the Webers and Fred. The Webers and Fred have suffered no detriment through a change of position in separately compromising with First National. By their compromises their maximum liability vis-a-vis First National was reduced from liability for the entire judgment debt to liability for one-third each; their maximum liability vis-a-vis the Gardners remained the same. A necessary element of an equitable estoppel is lacking because the Webers and Fred did not suffer a change of position for the worse as a result of their separate compromises. See Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334, 339 (1979).
We affirm.