Reversed and remanded for further proceedings consistent with this opinion.

887 A.2d 185

REPUBLIC BUSINESS CREDIT CORPORATION, PLAINTIFF, v. MONA CAMHE–MARCILLE, PAMELA CAMHE, RENEE POPKIN, AND ESTATE OF MORRIS CAMHE, DECEASED, DEFENDANT.

ESTATE OF MORRIS CAMHE, THIRD–PARTY PLAINTIFF, v. RICK CUCINOTTA, THIRD–PARTY DEFENDANT.

ESTATE OF MORRIS CAMHE, THIRD–PARTY PLAINTIFF–RESPONDENT/CROSS–APPELLANT. v. NEAL COHEN, THIRD–PARTY DEFENDANT–APPELLANT/CROSS–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 9, 2005—Decided December 13, 2005.

Before Judges COBURN, COLLESTER and LISA.

*Charles J. Kleiner and Schlacter & Associates,* attorneys for appellant/cross-respondent (*Mr. Kleiner,* on the brief).[1]

---

[1] Mr. Kleiner filed a waiver of argument and did not appear.

*Bruce D. Ettman* argued the cause for respondent/cross-appellant (*Spadoro & Hilson,* attorneys; *Mr. Ettman,* on the brief).

The opinion of the court was delivered by

COBURN, P.J.A.D.

Morris Camhe, Neil Cohen and Rick Cucinotta were equal principals in two corporations and co-guarantors on $2,233,535.12 in notes the corporations had given to Republic Business Credit Corporation. After the corporations defaulted and Camhe died, Republic sued Camhe's estate on the deceased's guarantee and obtained a $900,000 settlement.[2] The estate then brought the present action against Cohen and Cucinotta for contribution, alleging that its payment exceeded Camhe's proportionate share of the debt. On the estate's motion, the trial court entered summary judgment requiring Cohen and Cucinotta to each pay the estate $300,000, or one-third of the settlement. Cohen and Cucinotta appealed, but Cucinotta did not perfect his appeal, and it was dismissed. The estate filed a cross-appeal contending that the co-guarantors were jointly and severally liable for $600,000.

Two basic principles govern this case: (1) when one co-obligor pays more than his or her proportionate share of the common liability, he or she is entitled to contribution from the other co-obligors for the excess payment; and (2) each co-obligor is responsible to the other co-obligors for his or her proportionate share of the excess payment. Although the trial court correctly refused the estate's request to impose joint and several liability against the co-obligors, it disregarded the first principle by basing the liability of the co-obligors solely on the settlement amount. For that reason and because of factual disputes regarding the amount

---

[2] Cohen does not question the responsibility of the estate for Camhe's share. We assume that New York law on this point is similar to our own. *See N.J.S.A.* 2A:55-2 (providing that "[t]he representative of 1 joint debtor dying in the lifetime of the other joint debtor, may be charged with the obligation in the same manner as the representative might have been charged if the joint debtors had been bound severally as well as jointly").

of interest due on the corporate debt, we reverse and remand for further proceedings consistent with this opinion.

I

Camhe, Cohen, and Cucinotta were shareholders in XTRMZ, Ltd., a New York corporation that made and sold dresses. Camhe was responsible for financial matters, and Cohen and Cucinotta ran the day-to-day operations. In 1993, they formed another New York corporation, Impulsive, Inc., which also sold dresses. The three men owned equal shares in the two corporations. Two other shareholders in Impulsive ran its day-to-day operations until 1998, when they left and the company ceased business. XTRMZ was liable for a large portion of Impulsive's debt, and its efforts to pay that debt, combined with a general decline in business, forced XTRMZ into involuntary bankruptcy in April 1999.

Republic Business Credit Corporation provided accounts-receivable financing to both corporations, and Camhe, Cucinotta, and Cohen signed substantially identical guarantees of three corporate notes totaling $2,233,535.12 plus interest at a fluctuating rate of two percent per year above Republic's "Reference Rate." The notes also made the endorsers jointly and severally liable for the debt and for all costs of collection incurred by Republic and provided that their enforcement would be governed by the law of New York. The relevant portion of Section 8 of the guarantees contains this provision limiting the rights of guarantors to seek contribution:

If there is more than one Guarantor, each Guarantor agrees not to seek contribution from any other Guarantor until all the Obligations shall have been paid in full. If any amount shall nevertheless be paid to a Guarantor by ... another Guarantor such amount shall be held in trust for the benefit of [Republic] and shall forthwith be paid to [Republic] to be credited and applied to the Obligations, whether matured or unmatured. The provisions of this Section 8 shall survive the termination of this Guaranty, and any satisfaction and discharge of the Borrower by virtue of any payment, court order or any federal or state law.

As further security, Republic obtained $200,000 in cash from Camhe and assignment of the proceeds of two life insurance policies on Camhe, which were owned by XTRMZ and totaled

$673,774.56. Camhe died in September 1999. On February 29, 2000, Republic sued Camhe's estate on the notes, demanding damages of $2,233,535.12 plus interest, costs, and attorneys fees. On December 10, 2001, the case was settled with Republic retaining the $673,774.56 from the insurance policies and the $200,000 security deposit and receiving an additional $700,000 from Camhe's estate. The Order of Settlement also provided that the estate could file supplemental pleadings against the co-obligors. Consequently, the estate filed the instant third-party complaint seeking contribution and obtained summary judgment on September 10, 2004.

## II

■ Without citing any authority, Cohen argues first that Section 8 of the guarantees, as quoted above, precludes this lawsuit. But in making that argument, Cohen cites only the first sentence and leaves out the balance of the provision. Read in its entirety, Section 8 contemplates an action of this kind as between co-obligors and attempts to provide a measure of protection for Republic should one ensue. But since the estate's settlement with Republic provided that the estate could sue the co-obligors for contribution, it was no longer obliged to turn over any recovery to Republic. And since Republic has not sued Cohen, this is not the occasion to decide what effect, if any, Section 8 might have in reducing Cohen's obligation to Republic by reason of any payment made by him to the estate.

■ Although a literal reading of the first sentence of Section 8 supports Cohen's position, we must always be mindful that " 'there is no surer way to misread any document than to read it literally.' " *Schierstead v. Brigantine,* 29 *N.J.* 220, 231, 148 *A.*2d 591 (1959) (quoting Judge Learned Hand in *Guiseppi v. Walling,* 144 *F.*2d 608, 624 (2d Cir.1944), *aff'd sub nom. Gemsco, Inc. v. Walling,* 324 *U.S.* 244, 65 *S.Ct.* 605, 89 *L.Ed.* 921 (1945)). Moreover, "[d]isproportionate emphasis upon a word or clause or single provision does not serve the purpose of interpretation." *Newark*

*Publishers' Ass'n v. Newark Typographical Union*, 22 *N.J.* 419, 426, 126 *A.*2d 348 (1956). And "[w]ords and phrases are not to be isolated but related to the context and the contractual scheme as a whole, and given the meaning that comports with the probable intent and purpose." *Ibid.* In this context, we do not read Section 8 as freeing one co-obligor from his duty to another co-obligor or as preventing the instant action. Indeed, as noted, Section 8 contemplates that such an action will be brought exactly as occurred here.

■ Cohen argues next that the trial court erred in basing his share on the settlement instead of on the outstanding debt. He further contends that the outstanding debt was $2,233,535.12 plus "minimum interest of $442,798.28, for a total of $2,676,333.40" and asserts that the estate's one-third share is "at least $892,111.33." In a footnote, he suggests that the estate is not entitled to credit for the $200,000 in collateral provided by Camhe to Republic because it was "separately negotiated and agreed to by the deceased without [his] input or agreement. . . ." That claim deserves only a brief comment. Whether Cohen agreed to it or not, Camhe's estate paid the $200,000 as part of the settlement, thereby reducing the obligors' debt to Republic. Cohen concludes that if the estate is entitled to credit for the $200,000, then it only paid $7,888.67 in excess of Camhe's share ($900,000 minus $892,111.33) and that his share is one-half of the excess, or $3,944.34.

■■ Cohen is correct on the law, but incorrect in his math. Each joint obligor is responsible to the others for his or her proportionate share of the debt. *Falb v. Frankel*, 73 *A.D.*2d 930, 423 *N.Y.S.*2d 683, 685 (1980). And, as the court observed in *Beltrone v. General Schuyler & Co.*, 229 *A.D.*2d 857, 645 *N.Y.S.*2d 914, 915 (1996), it is a "well-settled equitable principle that a joint obligor who pays more than his proportionate share of a common liability is entitled to contribution from the other joint obligors." (citation omitted). If there are two other co-obligors, then each is responsible to the payor for one-half of the excess. *Slutsky v.*

*Leftt,* 160 *Misc.*2d 959, 609 *N.Y.S.*2d 528, 530 (N.Y.City Civ.Ct. 1993). Although this case is governed by the law of New York, the law of New Jersey is no different. *D'Ippolito v. Castoro,* 51 *N.J.* 584, 589–90, 242 *A.*2d 617 (1968); *Thomas v. Gardner,* 187 *N.J.Super.* 510, 514–15, 455 *A.*2d 533 (App.Div.1983). Therefore, Cohen's obligation to the estate is to pay one-half of the amount the estate paid to Republic in excess of Camhe's one-third share of the debt.

We turn next to the amount of the debt. Cohen's analysis suffers from two weaknesses. First, his calculation of interest is based on what he describes, without supporting citation, as New York's statutory rate, and he does not explain why that rate would be applicable when the notes call for interest at two percent above Republic's fluctuating Reference Rate. Therefore, a remand is necessary for the calculation of the interest due when the estate settled with Republic. Second, he fails to take into account the $673,774.56 Republic received from the insurance policies owned by XTRMZ and assigned to Republic as security for the debt. That sum obviously represented a payment by the principal on the debt, thereby reducing the debt from $2,233,535.12 to $1,559,760.56. The latter figure plus the interest due to Republic at the time the settlement order was entered would equal the amount of the total debt. If the $900,000 paid by the estate represents more than one-third of that debt, then the estate would be entitled to a judgment for one-half of the excess from Cohen, plus interest at the rates set by Rule 4:42–11(a) from the time the estate paid Republic pursuant to the order of settlement. *N. Bergen Rex Transp. v. Trailer Leasing Co.,* 158 *N.J.* 561, 575, 730 *A.*2d 843 (1999). On remand, both sides may offer proof with respect to the interest rate applicable to the notes, and the trial court shall resolve that issue and enter judgment accordingly.

■ Cohen offers two additional points, which we reject. Relying on the Uniform Commercial Code, *N.Y. U.C.C.* § 3–415, which is not substantively different from *N.J.S.A.* 12A:3–419, he claims he was not a co-obligor but rather an accommodation party. An

accommodation party is one who signs an instrument "for the purpose of incurring liability on the instrument without being a direct beneficiary of the value given for the instrument...." *N.J.S.A.* 12A:3–419(a). An accommodation party is liable on the note to the holder but not to the accommodated party. *N.J.S.A.* 12A:3–419(e); *N.Y. U.C.C.* § 3–415(5). Accordingly, if Cohen was an accommodation party, his status would preclude the estate from seeking contribution from him. But Cohen's claim is without merit because he was an equal principal in the corporations, sharing in the benefits the corporations enjoyed as a result of the Republic loan. *Kristiansen v. Kristiansen,* 280 *A.D.*2d 584, 720 *N.Y.S.*2d 553, 554 (2001). Furthermore the guarantees he signed clearly described him as a guarantor of the debt.

Cohen also argues that this suit is barred because the estate settled with Republic without notice to him. But the cases he cites, *Chase Manhattan Bank v. 264 Water Street Associates,* 222 *A.D.*2d 229, 634 *N.Y.S.*2d 687 (1995), and *National Union Fire Insurance Co. v. Red Apple Group, Inc.,* 309 *A.D.*2d 657, 767 *N.Y.S.*2d 68 (2003), concern the rights of indemnitors and not those of co-guarantors. The law regarding indemnity differs from that of contribution because all co-guarantors must share proportionately in the liability, and no case requires notice of a settlement in this context.

Reversed and remanded for further proceedings consistent with this opinion.