14 A.3d 737

TINA KIEFFER AND KEVIN KIEFFER, PLAINTIFFS, v. BEST BUY, DEFENDANT/THIRD–PARTY PLAINTIFF–RESPONDENT, v. AMERICAN INDUSTRIAL CLEANING, THIRD–PARTY DEFENDANT/FOURTH–PARTY PLAINTIFF–RESPONDENT, v. ALL CLEANING SOLUTIONS, FOURTH–PARTY DEFENDANT–APPELLANT.

Argued November 8, 2010—Decided March 15, 2011.

216

*Robert M. Brigantic* argued the cause for appellant (*Maloof, Lebowitz, Connahan & Oleske,* attorneys).

*Francis W. Worthington* argued the cause for respondent Best Buy (*Worthington & Worthington,* attorneys).

*Miriam R. Rubin* argued the cause for respondent American Industrial Cleaning.

Justice ALBIN delivered the opinion of the Court.

American Industrial Cleaning Co., Inc. (AIC) entered into an agreement with Best Buy Stores, L.P. (Best Buy) to clean and provide maintenance for its stores. AIC then subcontracted to All Cleaning Solutions Co. (All Cleaning) the daily cleaning of a Best Buy store in Holmdel. This case involves the interpretation of an indemnification agreement between AIC and All Cleaning. That agreement required All Cleaning to defend and indemnify AIC and Best Buy "from any connection with any act of negligence, omission, or conduct arising out of the operation of [All Cleaning's] business."

In a civil action, plaintiff Tina Kieffer alleged that she fell and suffered personal injuries as a result of the unsafe condition of the floor of the Holmdel Best Buy. AIC, All Cleaning, and Best Buy were all eventually named as defendants in that action. The trial court granted summary judgment in favor of all three defendants, concluding that they were not negligent or otherwise liable for the patron's injuries. Despite the no-negligence finding, the court ruled that All Cleaning was responsible to pay the legal defense costs of both AIC and Best Buy. The Appellate Division affirmed that finding.

We now reverse. We conclude that, under the terms of the indemnification agreement, All Cleaning had no contractual obligation to reimburse either AIC or Best Buy for their legal costs in the absence of a legal determination that All Cleaning caused—by its "negligence, omission, or conduct"—the injuries suffered by Kieffer.

## I.

### A.

### *The Accident*

On June 19, 2004, while shopping at Best Buy in Holmdel, Tina Kieffer "slipped and fell" on what she described as "a slippery substance."[1] She recalled that she was wearing sandals, "[t]he floor was very waxed," and "[t]here were no signs or warnings." She claimed that she did not observe "the dangerous condition" until after her fall, and that she "left skid marks on the floor." Kieffer suffered serious injuries to her ankle, including a bone fracture. Kieffer's mother, who was shopping with her, did not see or know what caused her daughter to fall.

All Cleaning provided cleaning services to the Holmdel Best Buy seven days a week. On the day of the accident, between 6:00 a.m. and 7:30 a.m., All Cleaning "swept, dusted, mopped and autoscrubbed" the floors. It had last waxed the store's floors nearly three months before the accident. According to the store manager's notation on a floor-maintenance form, the waxing was "satisfactory."[2]

---

[1] The undisputed facts presented are based on the summary-judgment record developed through the pleadings and discovery. Summary judgment is appropriate when "there is no genuine issue as to any material fact challenged and . . . the moving party is entitled to a judgment or order as a matter of law." *R.* 4:46-2(c). In deciding a motion for summary judgment, "courts must view the facts in the light most favorable to the non-moving party." *Bauer v. Nesbitt*, 198 *N.J.* 601, 604–05 n. 1, 969 *A.*2d 1122 (2009).

[2] Generally, Best Buy employees did not clean the store's floors other than to mop up a spill.

An expert retained by Kieffer, Dr. Wayne F. Nolte, Ph.D., P.E., a professional engineer, opined that in the area where Kieffer fell "the floor finish material was not properly applied" and that "the floor treatment was not uniform and consistent with the surrounding area." He concluded that "[t]he hazardous conditions created and maintained by Best Buy, [AIC] and [All Cleaning] caused this accident."

## B.

### The Lawsuit

In March 2006, Kieffer filed a civil complaint against Best Buy, alleging that she suffered personal injuries as a result of Best Buy's negligent maintenance of its Holmdel store. Later, Kieffer filed an amended complaint, naming AIC and All Cleaning as defendants and alleging that their negligence too was the proximate cause of her injuries. Her husband, a co-plaintiff, alleged a claim for loss of consortium in both complaints.[3] Best Buy filed a third-party complaint against AIC, claiming that AIC was "perform[ing] floor maintenance at the store" at the time of the accident and was contractually bound to defend and indemnify Best Buy. In turn, AIC filed a fourth-party complaint against All Cleaning, claiming that All Cleaning was "perform[ing] floor maintenance at the store" when the accident occurred and was contractually obligated to defend and indemnify AIC.

## C.

### The Indemnification Agreements

In December 2002, AIC entered into a contract with Best Buy, agreeing to furnish seven-day-a-week cleaning services to forty-seven Best Buy stores, including the Holmdel store at issue in this case. Under the agreement, AIC was permitted to delegate its duties to others but remained "solely responsible for the conduct

---

[3] Mr. and Mrs. Kieffer are collectively referred to as "plaintiffs."

of all such Subcontractors." The contract—denominated as the Floor Care Service Agreement—provided that AIC would

> indemnify, defend and hold harmless, Best Buy ... from and against any and all losses, costs, obligations, liabilities, damages, *actions, suits, causes of action, claims, demands,* settlements, judgments, and other expenses (including but not limited to cost of defense, settlement, and reasonable attorney's fees) of whatever type or nature, ... which are asserted against, incurred, imposed upon or suffered by Best Buy by reason of, or arising from: (1) the breach of this Agreement by Contractor....

[ (Emphasis added).]

In March 2004, AIC subcontracted to All Cleaning the cleaning and maintenance of certain designated Best Buy stores, including the Holmdel store. In accordance with the agreement, All Cleaning performed floor-cleaning services at the Best Buy store in Holmdel seven days a week. The agreement between AIC and All Cleaning—drafted by AIC—required All Cleaning

> to defend, hold harmless, and indemnify [AIC], [its] officers, shareholders, directors, agents, attorneys, employees and each of [its] customers *from any connection with any act of negligence, omission, or conduct arising out of the operation of [All Cleaning's] business and [its] performance or non-performance of the Services.*

[ (Emphasis added).]

AIC provided protocols for the cleaning of Best Buy stores and training for All Cleaning personnel. In addition, AIC was responsible for inspecting the work performed by All Cleaning.

## II.

## A.

### *The Trial Court*

The trial court granted summary judgment in favor of defendants Best Buy, AIC, and All Cleaning on all of plaintiffs' claims. The court noted that Kieffer did not know why she fell and that "her only observation [was] that the floor was shiny." The court rejected the conclusion reached by plaintiffs' professional engineer that Kieffer fell because of defendants' negligent maintenance of the store floor, finding it to be nothing more than

a "net opinion." [4] It found that the expert's opinion, based in part on an inspection of the store's floor three years after the accident, was insufficient to establish defendants' liability. Viewing the evidence in the light most favorable to plaintiffs, the court determined that there was "no proof whatsoever that ... defendants were negligent" in maintaining the floor at the Holmdel Best Buy store.

Based on the indemnification agreements, Best Buy moved to hold AIC liable for the costs of defending against plaintiffs' suit and AIC moved to hold All Cleaning liable for both its legal costs and those it owed to Best Buy. In deciding that issue, the court found that "there's no evidence in the case that [there] was a deleterious substance ... that should not have been put on the floor." The court also later noted that there was no claim of a "wet spot" on the floor. The court granted summary judgment to both Best Buy and AIC on their respective motions. AIC was ordered to reimburse Best Buy $25,790.09 for legal costs and expenses incurred defending against plaintiffs' claims. All Cleaning was ordered to reimburse AIC not only for the $11,763.75 in legal costs AIC expended defending the lawsuit, but also for the $25,790.09 AIC owed to Best Buy. In short, All Cleaning was required to pick up the legal tabs for both Best Buy and AIC.

In denying All Cleaning's motion for reconsideration, the court made findings that indicate that it did not differentiate between the indemnification agreement binding Best Buy and AIC and the indemnification agreement binding AIC and All Cleaning. The court stated that each agreement was "a standard contract for defense and indemnification" and that each required the indemnitor to "indemnify, defend, and hold harmless [the indemnitee] against losses, costs, obligations, liabilities, damages, *actions,*

---

[4] A net opinion is "an expert's bare conclusions, unsupported by factual evidence." *Buckelew v. Grossbard,* 87 *N.J.* 512, 524, 435 *A.*2d 1150 (1981). One aspect of a net opinion is its failure "to explain a causal connection between the act or incident complained of and the injury or damage allegedly" suffered. *Ibid.*

*suits, causes of action, claims[,] demands,* settlements, judgments, or other expenses." (Emphasis added). However, the quoted language is only contained in the Best Buy/AIC indemnification agreement. The court took the position that the two indemnification agreements—the one between Best Buy and AIC and the one between AIC and All Cleaning—were triggered by "claims": "A claim is a claim. And in this case there was a claim brought by the plaintiff and it was predicated on improper floor maintenance."

The court noted that "plaintiff had no case," but added that it made no finding concerning All Cleaning's conduct. The court never grappled with the actual language of the AIC/All Cleaning indemnity agreement in rejecting All Cleaning's motion for reconsideration.

## B.

### *The Appellate Division*

In an unpublished opinion, the Appellate Division affirmed the trial court's order "directing [All Cleaning] to pay the defense costs incurred by defendants Best Buy and [AIC]." The appellate panel—like the trial court—mistakenly attributed the language in the Best Buy/AIC indemnification agreement to the AIC/All Cleaning agreement. The panel stated that

> [u]nder the terms of All Cleaning's indemnity agreement, it was obliged, among other conditions, to indemnify [Best Buy and AIC] for all "claims," "demands," or "assert[ions]," "arising out of" or "arising from" the performance of its cleaning services at the Best Buy stores on AIC's behalf and on behalf of AIC's customers, which would include Best Buy.

Having inadvertently ascribed that language to the AIC/All Cleaning indemnification agreement, the panel found no ambiguity in the agreement's wording. According to the panel, "[t]he language contained in both indemnity agreements [did] not require a finding of negligence on the part of All Cleaning as a condition precedent to triggering the indemnity provisions." The panel believed that plaintiffs' "theory of liability"—that the failure to properly apply

the floor-finish material caused the accident—"triggered the indemnity provisions of All Cleaning's subcontract with AIC." All Cleaning therefore was liable for the legal costs incurred by AIC and its customer, Best Buy.

We granted All Cleaning's petition for certification. 203 *N.J.* 93, 999 *A.2d* 462 (2010).

## III.

### A.

The primary issue is whether the trial court and Appellate Division properly construed the indemnification provision of the contract between AIC and All Cleaning. Here, both courts focused on language in the wrong contract, the broader language of the Best Buy/AIC contract, which required AIC to "indemnify, defend and hold harmless, Best Buy ... from ... actions, suits, causes of actions, claims, demands...." In contrast, the much more narrowly drawn indemnification provision of the AIC/All Cleaning contract was triggered by All Cleaning's own fault or conduct. In its contract with AIC, All Cleaning promised "to defend, hold harmless, and indemnify" AIC and its customer, Best Buy, "from any connection with any act of negligence, omission, or conduct arising out of the operation of [All Cleaning's] business and [its] performance or non-performance of the Services." Conspicuously absent from the language of this indemnification provision is the explicit obligation to reimburse the legal costs for the defense of suits, causes of actions, and claims that a court later determines to be unfounded.

Our analysis begins with some basic rules governing the interpretation of contracts and indemnification provisions.

### B.

The interpretation of a contract is subject to de novo review by an appellate court. *See Jennings v. Pinto,* 5 *N.J.* 562, 569–70, 76 *A.2d* 669 (1950) ("[I]t is a general rule that the

construction of a contract is a question of law....").[5]  Accordingly, we pay no special deference to the trial court's interpretation and look at the contract with fresh eyes.  *See Manalapan Realty, L.P. v. Twp. Comm.*, 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.").

The objective in construing a contractual indemnity provision is the same as in construing any other part of a contract—it is to determine the intent of the parties.  *Mantilla v. NC Mall Assocs.*, 167 *N.J.* 262, 272, 770 *A.*2d 1144 (2001) (citation omitted).  The judicial task is simply interpretative; it is not to rewrite a contract for the parties better than or different from the one they wrote for themselves.  *See Zacarias v. Allstate Ins. Co.*, 168 *N.J.* 590, 595, 775 *A.*2d 1262 (2001) (citation omitted).  Thus, we should give contractual terms "their plain and ordinary meaning," *M.J. Paquet, Inc. v. N.J. Dep't of Transp.*, 171 *N.J.* 378, 396, 794 *A.*2d 141 (2002), unless specialized language is used peculiar to a particular trade, profession, or industry, *see VRG Corp. v. GKN Realty Corp.*, 135 *N.J.* 539, 548, 641 *A.*2d 519 (1994) (citation omitted); *see also N.J.S.A.* 12A:1-205.  If an indemnity provision is unambiguous, then the words presumably will reflect the parties' expectations.  *See Zacarias, supra*, 168 *N.J.* at 595, 775 *A.*2d 1262.

However, indemnity provisions differ from provisions in a typical contract in one important aspect.  If the meaning of an indemnity provision is ambiguous, the provision is "strictly construed against the indemnitee."  *Mantilla, supra*, 167 *N.J.* at 272, 770 *A.*2d 1144 (quoting *Ramos v. Browning Ferris Indus. of S.*

---

[5] De novo review of a contract is predicated on the absence of a factual dispute at issue.  *Jennings, supra*, 5 *N.J.* at 569–70, 76 *A.*2d 669.  When there is such a factual dispute, the finder of fact must resolve it, and a deferential standard of review applies.  *See id.* at 570, 76 *A.*2d 669.  In this case, we deal merely with the language of the contract and not with factual disputes.

*Jersey, Inc.,* 103 *N.J.* 177, 191, 510 *A.*2d 1152 (1986)). The strict-construction approach is taken for two apparent reasons. *See Am. Bldg. Maint. Co. v. L'Enfant Plaza Props., Inc.,* 655 A.2d 858, 861–62 (D.C.1995) (citation omitted). One is that a party ordinarily is responsible for its own negligence, and shifting liability to an indemnitor must be accomplished only through express and unequivocal language. *See ibid.* (citation omitted). Another is that, under the American Rule, absent statutory or judicial authority or express contractual language to the contrary, each party is responsible for its own attorney's fees. *See ibid.* (citation omitted).

Here, AIC is not only the indemnitee, but also the contract's drafter. Another reason for construing any ambiguous language in the indemnification provision against AIC is because, as the drafter, it chose the words that may be susceptible to different meanings—one favorable to All Cleaning. *Cf. Pacifico v. Pacifico,* 190 *N.J.* 258, 267–68, 920 *A.*2d 73 (2007). To the extent that AIC's ambiguously drafted contractual language raised reasonable expectations on the part of All Cleaning, AIC can hardly complain when its words are strictly construed against it. "[W]here one party chooses the term of a contract, he is likely to provide more carefully for the protection of his own interests than for those of the other party." *Id.* at 268, 920 *A.*2d 73 (citation, internal quotation marks, and alteration omitted).

## C.

██ Applying those principles, the contract entered into between AIC and All Cleaning did not obligate All Cleaning to indemnify AIC or Best Buy for the legal costs of defending a lawsuit that was dismissed for lack of evidence. Unlike the clear language of the Best Buy/AIC contract, the AIC/All Cleaning contract did not require All Cleaning to defend and indemnify AIC or Best Buy based on the assertion of mere "claims" by a party. The indemnification clause drafted by AIC only imposed on All Cleaning the responsibility of paying defense costs "from any connection with any act of negligence, omission, or conduct arising

out of the operation of [All Cleaning's] business and [its] perform-ance or non-performance of the Services."

AIC argues that the language "connection with" and "arising out of" is a proxy for terms explicitly stated in the Best Buy/AIC contract: "claims" and "demands." We cannot write a better contract for AIC than the one it drafted for All Cleaning's signature. We decline to insert language in the AIC/All Cleaning indemnification provision that imposes on All Cleaning the obli-gation to reimburse AIC and Best Buy on dismissed claims.

Even if we determined that the indemnification provision was ambiguous and susceptible to another interpretation, our jurispru-dence requires that we construe the provision against AIC, the indemnitee and drafter of the document. *See Pacifico, supra,* 190 *N.J.* at 267–68, 920 *A.*2d 73 (citation omitted); *Ramos, supra,* 103 *N.J.* at 191, 510 *A.*2d 1152 (citation omitted). If AIC wanted broad indemnification coverage encompassing claims, it could have drafted an indemnification similar to the indemnification agree-ment between it and Best Buy.

All Cleaning's indemnification obligations depended on a judicial finding of some "negligence, omission, or conduct" on its part based on evidence in the record or an admission by All Cleaning. Plaintiffs alleged in their complaint that Best Buy, AIC, and All Cleaning negligently cleaned and maintained the floor of the Best Buy store in Holmdel, proximately causing Kieffer's injuries. However, the trial court ultimately concluded that those claims were unsustainable. The trial court granted summary judgment in favor of all three defendants, finding no evidence that any of the three exercised a lack of due care in cleaning or maintaining the Holmdel store's floors. Although All Cleaning waxed the floors three months before the accident and cleaned the floors on the day of the accident, the court did not attribute Kieffer's fall to the condition of the floor. The record is devoid of any judicial finding that All Cleaning's conduct somehow caused the accident.

In light of the evidence—or more pointedly the absence of evidence—the trial court could not account for why Kieffer fell.

Based on the court's grant of summary judgment in dismissing plaintiffs' complaint and the court's commentary at the proceedings to resolve the indemnification question, we essentially have a judicial finding that Kieffer's injuries were not in "connection with any act of negligence, omission, or conduct arising out of the operation of [All Cleaning's] business." That judicial finding along with a plain reading of the AIC/All Cleaning indemnification provision leads to the conclusion that All Cleaning is not contractually responsible for paying AIC's and Best Buy's defense costs.

## IV.

We therefore reverse the Appellate Division, which affirmed the trial court's entry of summary judgment in favor of AIC. On the record before us, we hold that it was error to find that All Cleaning was obligated to reimburse both AIC and Best Buy for their legal costs and expenses in defending against plaintiffs' complaint.[6] We note that All Cleaning did not move for summary judgment and, under ordinary circumstances, we would remand for further proceedings. However, the trial court's findings, which cleared Best Buy, AIC, and All Cleaning of any liability as the cause of Kieffer's injuries, are sufficient for us to bring this matter to an end. Viewing the undisputed facts in the light most favorable to AIC, and given our interpretation of the AIC/All Cleaning indemnification provision (drafted by AIC), All Cleaning is entitled to judgment as a matter of law. *See Sheild v. Welch,* 4 *N.J.* 563, 566–67, 73 *A.*2d 536 (1950) (permitting court to enter summary judgment sua sponte for non-moving party).

We remand to the trial court for entry of judgment dismissing AIC's fourth-party complaint against All Cleaning.

---

[6] We do not disturb the trial court's finding that under the indemnification provision binding Best Buy and AIC, AIC was liable to reimburse Best Buy for its defense costs. That issue is not before us.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, RIVERA–SOTO, HOENS and STERN (temporarily assigned)—7.

*Opposed*—None.

