SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Patrick Boyle v. Carol Huff** (A-42-22) (087900)

**Argued November 8, 2023 -- Decided May 30, 2024**

**NORIEGA, J., writing for a unanimous Court.**

In this appeal, the Court considers whether an indemnification clause in a condominium association's bylaws applies to an indemnitee's first-party claim for attorneys' fees and costs against the association.

Plaintiff Patrick Boyle owns one of the approximately 750 units of the Ocean Club Condominium (OC Condominium). As a unit owner, Boyle is afforded membership in the Ocean Club Condominium Association, which oversees OC Condominium affairs in accordance with the OC Condominium Master Deed and By-laws (bylaws). The Association is managed by a Board of Trustees (Board), comprised of seven members, who are all unit owners. Trustees are indemnified by the Association in accordance with Article VI, Section 1 of the bylaws.

Boyle was appointed to a seat on the Board. Following a bitter dispute between Boyle and his fellow trustees over the financial management of the Association, the Board adopted a special resolution to expel Boyle as a trustee.

Boyle filed a complaint challenging his removal. The trial court reinstated him as a trustee, holding that the Board violated the bylaws and relevant regulations by failing to provide adequate notice of the vote to consider Boyle's expulsion. Boyle filed an amended complaint, adding additional claims including for indemnification. He later filed a third amended complaint, bringing a derivative claim on behalf of the Association and alleging that the trustee defendants breached their fiduciary duties; he sought indemnification for that claim as well.

Boyle was defeated in the next Board election, after which both sides moved for summary judgment. The trial court held in relevant part that the plain language of the bylaws entitled Boyle to counsel fees and costs. The Appellate Division found that the indemnification provision covered the fees and costs Boyle incurred in his action to be reinstated as trustee but not in his derivative action claim. The Court granted certification. 253 N.J. 589 (2023).

1

**HELD:** The ambiguous indemnification provision at issue here must be construed against the indemnitee, and the Court therefore reverses the Appellate Division's judgment. Prospectively, parties to a contract intending to extend indemnification to first parties should include express language to achieve such an agreement.

1. When the meaning of an indemnification clause is ambiguous, the provision is strictly construed against the indemnitee because (1) a party is ordinarily responsible for its own negligence, and shifting liability to an indemnitor must be accomplished only through express and unequivocal language, and (2) under the "American Rule," absent statutory or judicial authority or express contractual language to the contrary, each party is responsible for its own attorney's fees. (p. 12)

2. The Court reviews in detail the three-sentence indemnification provision in the Association's bylaws. The second sentence expressly provides that "[t]he Association shall indemnify every Trustee . . . against all loss, costs and expenses, including counsel fees, reasonably incurred by him in connection with any action, suit, or proceeding to which he may be a party by reason of his being or having been a Trustee," absent willful misconduct or bad faith. Read in isolation, that sentence could support indemnification here, as Boyle argues and the Appellate Division found. But the interplay between the third sentence, in which the Association's counsel must judge the indemnitee trustee's behavior -- an assessment that would be illogical if the second sentence were to extend indemnification to suits in which the Association and the trustees were adverse -- and the first sentence, which provides that trustees "shall not be liable to the Unit Owners," suggests that the reasonable interpretation of the second sentence is that the agreement was meant to cover any and all actions by unit owners who bring actions against trustees in their capacity as trustees. At minimum, the indemnification provision is ambiguous and must therefore be construed against Boyle as the indemnitee. (pp. 13-17)

3. Parties are free to determine whether to extend indemnification provisions to first-party actions or limit them solely to third-party actions. Although the Court has never previously held that a contract should contain express language to permit indemnification of first-party claims, its prior decisions support such a conclusion. The Court thus encourages parties seeking to permit indemnification of first-party claims to include express language to do so. Otherwise, any ambiguity will continue to be construed against the indemnitee. (pp. 17-19)

     **REVERSED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, and WAINER APTER join in JUSTICE NORIEGA's opinion. JUSTICE FASCIALE did not participate.**

2

SUPREME COURT OF NEW JERSEY

A-42 September Term 2022

087900

Patrick Boyle, individually
and derivatively on behalf of
the Ocean Club Condominium
Association,

Plaintiff-Respondent,

v.

Carol Huff, Diane Miller,
Tommy Harrell, Joseph
Roehrig, and Seny Belete-
Levin,

Defendants,

and

Ocean Club Condominium
Association,

Nominal Defendant-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| November 8, 2023 | May 30, 2024 |

Craig D. Gottilla argued the cause for appellant (Ansell,
Grimm & Aaron, attorneys; Craig D. Gottilla and Nicole
D. Miller, on the brief).

1

Barry J. Pollack (Harris St. Laurent & Wechsler) of the District of Columbia bar, admitted pro hac vice, argued the cause for respondent (McCarter & English, attorneys); Gary M. Fellner and Caitlin M. Nolan, on the brief (Porzio, Bromberg & Newman).

JUSTICE NORIEGA delivered the opinion of the Court.

In this appeal we consider whether an indemnification clause in a condominium association's bylaws applies to an indemnitee's first-party claim for attorneys' fees and costs against the association.

Here, a trustee of a condominium association filed a complaint seeking to enjoin the association from removing him from his position. As part of his complaint, the trustee sought indemnification from the association for all attorneys' fees and expenses arising from the litigation, relying on a provision of the bylaws under which trustees were declared not liable to unit owners and the association was generally bound to indemnify trustees for legal expenses incurred due to their role as trustees. The trial court granted summary judgment and awarded the trustee the fees and expenses sought. The Appellate Division affirmed the judgment but remanded the matter for reconsideration of the ultimate amount of attorneys' fees.

We hold that the ambiguous indemnification provision at issue here must be construed against the indemnitee, and therefore reverse the Appellate

2

Division's judgment. Prospectively, parties to a contract intending to extend indemnification to first parties should include express language to achieve such an agreement.

I.

A.

We rely upon the following facts derived from plaintiff's third amended complaint, filed in 2021.

Plaintiff Patrick Boyle owns one of the approximately 750 units of the Ocean Club Condominium (OC Condominium), in Atlantic City, where he resides with his wife. As a unit owner, Boyle is afforded membership in the Ocean Club Condominium Association (Association). The Association is a non-profit corporation that oversees OC Condominium affairs in accordance with the OC Condominium Master Deed and By-laws (bylaws). The Association is managed by a Board of Trustees (Board), comprised of seven members, who are all unit owners.

The bylaws provide for the terms of service, election, and removal of trustees. Board members are elected by the Association members and serve for two-year terms. They may be removed, with or without cause, by an affirmative vote of two-thirds of the Association members. Relevant here,

3

trustees are indemnified by the Association in accordance with Article VI, Section 1 of the bylaws, which we review in detail below.

Boyle purchased a unit with his wife in 2017. In June 2018, the Board temporarily appointed Boyle to fill a vacancy and later appointed him to a regular seat in August 2019. Boyle's background and experience as an accountant led him to raise serious concerns regarding "errors and anomalies" he discovered in the Association's finances. A bitter dispute arose between Boyle and his fellow trustees over the financial management of the Association.

In response, on August 16, 2020, the Board adopted a special resolution to expel Boyle as a trustee. The Board's resolution alleged that Boyle had engaged in various acts of misconduct, including "disrupting the 2019 election . . . [and the] assault, harassment, intimidation, and bullying of other board members." After his expulsion, Boyle requested reinstatement, which the Board refused.

## B.

In October 2020, Boyle and his wife filed a complaint and order to show cause against the trustees who ousted him. Boyle's original claim sought a declaratory judgment that his removal was improper, requested reinstatement, and alleged a violation of N.J.A.C. 5:26-8.11(b) on the ground that the Board

4

expelled him without offering Alternative Dispute Resolution (ADR). Boyle also sought to enjoin the Board from any further attempts to remove him without following proper procedures under the Administrative Code or bylaws. Boyle additionally alleged causes of action in tort, including defamation and a separate claim of breach of fiduciary duty by defendants, brought derivatively on behalf of OC Condominium.

The trial court granted Boyle's preliminary relief and reinstated him as a trustee on December 11, 2020, holding that the Board violated the bylaws and N.J.A.C. 5:26-8.12(a) and (d) because Boyle and other members were not provided with adequate notice of the scheduled vote.

The trustees thereafter scheduled a special meeting on December 18, 2020, for the sole purpose of voting on Boyle's removal. Boyle filed an amended complaint, adding claims for indemnification and an order to show cause relating to the scheduled meeting. After hearing arguments, the trial court entered an order enjoining the Board from holding a member vote to remove Boyle until after the parties submitted to ADR pursuant to N.J.A.C. 5:26-8.11(b)(1). The parties agreed to arbitrate the Board's right to remove Boyle.

In April 2021, Boyle filed a third amended complaint, bringing a derivative claim on behalf of the Association and alleging that the trustee

defendants breached their fiduciary duties.  The complaint sought: (1) injunctive relief to reinstate Boyle as a trustee and to enjoin defendants from future attempts to remove Boyle from the Board; (2) reimbursement of Boyle's fees and costs under the indemnification provisions of the bylaws; and (3) a declaration that Boyle's removal from the Board was wrongful.

Arbitration was scheduled for July 26, 2021.  Defendants abandoned arbitration, hoping instead that Boyle would not be reelected in the board election scheduled for August 2021.  The parties withdrew the request to participate in arbitration and the trial court entered a consent order to that effect, noting that the parties reserved all other rights and defenses.

Boyle was defeated in the August 2021 election.  He moved for summary judgment on the counts for injunctive and declaratory relief and for partial summary judgment on the indemnification provision, claiming he was entitled to fees and costs pursuant to the bylaws.  Defendants cross-moved for summary judgment on all counts.

The trial court issued an order granting Boyle's motion for summary judgment and denying defendants' cross-motion for summary judgment.  As to indemnification, the trial court held that the plain language of the bylaws entitled Boyle to counsel fees and costs.  The trial court found that Article VI of the bylaws did not limit indemnification to fees and costs incurred by a

6

trustee in an action brought by a third-party against the trustee, but also extended to first-party claims where the trustee was the plaintiff. It further held that when defendants abandoned ADR, they waived their right to argue Boyle's willful misconduct or bad faith exempted him from indemnification.

The court awarded Boyle legal fees and costs incurred in the amount of $516,811.80, to be paid within thirty days. Boyle moved for reconsideration of that calculation, and defendants simultaneously moved for a stay of the payment. The trial court did not schedule a hearing of the stay request until after the thirty-day deadline, prompting defendants to move before the Appellate Division for leave to appeal and for a stay of that payment.

The Appellate Division granted defendants' motion for a stay, and the trial court granted the motion for reconsideration. The trial court awarded Boyle a final judgment of $563,031.80, based upon a clerical error the court discovered during its initial calculation. In its order, the trial court acknowledged the Appellate Division's order staying the thirty-day payment requirement. Defendants thereafter filed their notice of appeal from the final judgment and order entering summary judgment.

In an unpublished opinion deciding the consolidated appeals, the Appellate Division rejected defendants' arguments regarding the interpretation of the indemnification provision. The court found that the indemnification

7

provision covered the fees and costs Boyle incurred in his action to be reinstated as trustee. The appellate court, however, reversed the actual fee award, finding that Boyle was not entitled to fees incurred in pursuing his derivative action claim.

The Appellate Division rejected defendants' argument on several grounds. First, using principles of contract interpretation, the court determined that there was nothing ambiguous about the indemnification language. Second, regarding whether indemnification provisions should apply to first-party claims, the Appellate Division found that the subject provision contained no language precluding a suit involving one trustee against other trustees. Third, the appellate court determined that because defendants abandoned ADR, they had waived the ability to argue that an exemption to the indemnification provision resulting from Boyle engaging in misconduct or bad faith should apply. Fourth, the court concluded that Boyle was not entitled to any fees incurred in prosecuting the derivative action claim because he was acting in a capacity other than trustee for the Board for purposes of that claim. The Appellate Division affirmed the entry of summary judgment.

We granted defendants' petition for certification on all issues. 253 N.J. 589 (2023).

8

II.

Defendants argue that the Appellate Division's judgment was based upon three fundamental errors. First, the court ignored the word "indemnify" in the opening clause of the indemnification provision and instead focused exclusively on the phrase "any action." Second, the Appellate Division disregarded the American Rule for attorneys' fees by holding that fees incurred in enforcing a contractual indemnification agreement are recoverable, even in the absence of explicit language to that effect. Third, the Appellate Division improperly found that the Association waived its ability to raise defenses and exceptions to the indemnification agreement by foregoing ADR.

Boyle urges this Court to affirm the Appellate Division's decision, which he claims rightly found that the indemnification provision covers "all loss, costs and expenses, including counsel fees." Boyle also contends that no factual disputes remained once defendants opted to abandon ADR, and that defendants are therefore barred from raising any claims of willful misconduct or bad faith as exceptions to indemnification.

III.

A.

We review de novo the trial court's order granting summary judgment and are guided by the same standards that governed its decision. Samolyk v.

9

Berthe, 251 N.J. 73, 78 (2022). That standard mandates that summary judgment be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "When no issue of fact exists, and only a question of law remains, this Court affords no special deference to the legal determinations of the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). This appeal turns on the interpretation of Article VI, Section 1 of the Association's bylaws.

We interpret condominium association bylaws using the traditional "canons of contract construction," Highland Lakes Country Club & Cmty. Ass'n v. Franzino, 186 N.J. 99, 116 (2006), and contract interpretation is also "subject to de novo review by an appellate court," Kieffer v. Best Buy, 205 N.J. 213, 222 (2011). Thus, "[w]e accord no special deference to the trial court's or Appellate Division's interpretative analysis and 'look at the contract with fresh eyes.'" GMAC Mortg., LLC v. Willoughby, 230 N.J. 172, 183 (2017) (quoting Kieffer, 205 N.J. at 223).

In that process, "[o]ur only charge is to give a faithful and logical reading to the words chosen by the parties to the agreement," ibid., in order to

10

"discern and implement the intentions of the parties," Quinn v. Quinn, 225 N.J. 34, 45 (2016). To do that, we "read the document as a whole in a fair and common sense manner," Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103 (2009), mindful that "[d]isproportionate emphasis upon a word or clause or single provision does not serve the purpose of interpretation," Republic Business Credit Corp. v. Camhe-Marcille, 381 N.J. Super. 563, 568-69 (App. Div. 2005) (alteration in original) (quoting Newark Publishers' Ass'n v. Newark Typographical Union, 22 N.J. 419, 426 (1956)). Accordingly, "[w]ords and phrases are not to be isolated but related to the context and the contractual scheme as a whole, and given the meaning that comports with the probable intent and purpose." Id. at 569 (alteration in original) (quoting Newark Publishers' Ass'n, 22 N.J. at 426).

To review an indemnity provision in a contract, we strive for the same goal as we do in reviewing any contractual provision -- discerning the intent of the parties. See Kieffer, 205 N.J. at 223. "The judicial task is simply interpretative; it is not to rewrite a contract for the parties better than or different from the one they wrote for themselves." Ibid. The terms used in the contract are given their plain and ordinary meaning, and "[i]f an indemnity provision is unambiguous, then the words presumably will reflect the parties' expectations." Ibid.

11

Indemnity provisions, however, differ from other contractual provisions in one important respect:  when the meaning of the clause is ambiguous, an indemnification provision will be "strictly construed against the indemnitee." Id. at 223-24 (quoting Mantilla v. NC Mall Assocs., 167 N.J. 262, 272 (2001)). We have previously acknowledged that this construction has "two apparent reasons." Id. at 224.  "One is that a party is ordinarily responsible for its own negligence, and shifting liability to an indemnitor must be accomplished only through express and unequivocal language." Ibid.  The second is that "under the American Rule, absent statutory or judicial authority or express contractual language to the contrary, each party is responsible for its own attorney's fees."[1]  Ibid. (emphasis added).  Those two principles will help guide our analysis below.

---

[1]  New Jersey courts "have traditionally adhered to the American Rule as the principle that governs the allocation of attorneys' fees." Occhifinto v. Olivo Const. Co., LLC, 221 N.J. 443, 449 (2015) (quoting Walker v. Giuffre, 209 N.J. 124, 127 (2012)).  At its essence, the American Rule requires that litigants "bear the cost of their own legal representation" by prohibiting "'recovery of counsel fees by the prevailing party against the losing party.'" Ibid. (quoting In re Est. of Vayda, 184 N.J. 115, 120 (2005)).  The rule promotes three goals: "(1) unrestricted access to the courts for all persons; (2) ensuring equity by not penalizing persons for exercising their right to litigate a dispute, even if they should lose; and (3) administrative convenience." In re Niles Tr., 176 N.J. 282, 294 (2003).  Certain statutes and court rules create exceptions to the American Rule, and parties to a contract may provide for an award of attorneys' fees provided they do so through "express contractual language." Kieffer, 205 N.J. at 224.

This case calls upon the Court to determine whether an indemnification provision provides for the recovery of attorneys' fees in a first-party claim, such as here, where Boyle, the party to be indemnified, files a claim against the Association, the party agreeing to indemnify -- as opposed to a claim involving a third party, where a unit owner sues Boyle in his role as a trustee for the Association.

We begin, as we must, with the text we interpret. Article VI, Section 1 of the Association's bylaws provides as follows:

> The Trustees and officers shall not be liable to the Unit Owners for any mistake of judgment, negligence or otherwise, except for their own individual willful misconduct or bad faith. <u>The Association shall indemnify every Trustee and officer . . . against all loss, costs and expenses, including counsel fees, reasonably incurred by him in connection with any action, suit, or proceeding to which he may be a party by reason of his being or having been a Trustee or officer of the Association except as to matters as to which he shall be finally adjudged in such action, suit or proceeding to be liable for willful misconduct or bad faith.</u> In the event of a settlement, indemnification shall be provided only in connection with such matters covered by the settlement as to which the Association is advised by counsel that the person to be indemnified had not been guilty of willful misconduct or bad faith in his performance of his duty as such Trustee or officer in relation to the matter involved.
>
> [(emphasis added).]

Article VI, Section 1 thus consists of three sentences, the second of which expressly provides that "[t]he Association shall indemnify every Trustee" for litigation expenses arising out of an individual's role as trustee absent willful misconduct or bad faith. To "indemnify" means "(1) [t]o reimburse (another) for a loss suffered because of a third party's or one's own act or default; hold harmless; (2) to promise to reimburse (another) for such a loss; and (3) to give (another) security against such loss." Black's Law Dictionary 918 (11th ed. 2019). The very definition of the term extends indemnification to first or third parties, and the second sentence does not limit its application; indeed, the second sentence provides for indemnification "against all loss . . . in connection with any action." Ibid. (emphases added).

Read in isolation, it is not difficult to see how that phrase could support indemnification here, as Boyle argues and the Appellate Division found. Were we to focus solely on that single sentence, an obligation to indemnify a trustee could be construed to extend to all manner of lawsuits and actions -- including actions by one trustee against another -- any time a trustee is a party to an action that arises from the trustee's position, absent willful misconduct or bad faith by the trustee.

14

But that narrow focus excludes all the remaining provisions of the paragraph. Reading Article VI, Section 1 in its entirety sets forth the full scope and limits of the nature of the indemnification intended.

The first sentence identifies the nature of the actions anticipated, namely, actions taken by the "[u]nit [o]wners" against a trustee. It states that "[t]rustees . . . shall not be liable to the [u]nit [o]wners for any mistake of judgment, negligence or otherwise, except for their own individual willful misconduct or bad faith." (emphasis added). Reading the second sentence after the first offers a different view of the provision's scope: that it only relates to claims brought by unit owners against trustees, thus providing indemnification for third-party but not first-party claims.

That more limited view of the second sentence finds support in the third sentence of the paragraph, which grants the Association a basis to withhold indemnification if its counsel advises that any part of the settlement is attributable to a trustee's willful misconduct or bad faith. In other words, in the case of a settlement -- i.e., absent a judicial determination regarding misconduct or bad faith -- the third sentence places counsel for the Association in the position of assessing a trustee's conduct. This type of assessment would be illogical if the second sentence were to extend indemnification to suits in

15

which the Association and the trustees were adverse, such as in suits brought by trustees against the Association.

In short, the interplay between the third sentence, in which the Association's own counsel must judge the indemnitee trustee's behavior, and the first sentence, which provides that trustees "shall not be liable to the [u]nit [o]wners," suggests that the more reasonable interpretation of the second sentence is that the agreement was meant to cover any and all actions by unit owners who bring actions against trustees in their capacity as trustees.

Although exclusive focus on the second sentence suggests that indemnification might extend to first-party claims, such focus disregards our rules of construction, which require review of the entirety of a provision to glean the intent of the parties and preclude interpreting words or phrases in isolation. See Hardy, 198 N.J. at 103; Republic Bus. Credit Corp., 381 N.J. Super. at 569. Reading the second sentence in the context of Article VI, Section 1 as a whole leads to the conclusion that the entire paragraph relates to third-party claims by unit owners against trustees and those trustees will therefore be indemnified for all costs reasonably incurred only when unit owners initiate an action against them in their capacity as trustees, and no willful misconduct or bad faith is found.

16

At minimum, the indemnification provision is ambiguous and must therefore be construed against Boyle as the indemnitee. See Kieffer, 205 N.J. at 223-24. Contrary to the conclusion reached by the Appellate Division, we cannot presume first-party coverage in the absence of language precluding it; rather, there must be affirmative indicia of the intent to indemnify to overcome the presumption that parties will each pay their own way. See id. at 224.

## C.

In holding that the indemnification provision does not cover Boyle's claims, we stress that we do not agree with defendants' assertion that "it is axiomatic" that indemnification must be based on third-party claims.

For that proposition, defendants rely upon a previous holding of the Appellate Division that a disputed indemnification agreement could not be "presented as a shield against claims asserted against the indemnitee by the indemnitor" because "an indemnification agreement must be based upon 'the indemnitee's claim to obtain recovery from the indemnitor for liability incurred to a third party.'" Invs. Sav. Bank v. Waldo Jersey City, LLC, 418 N.J. Super 149, 159 (App. Div. 2011) (quoting Travelers Indem. Co. v. Dammann & Co., 592 F. Supp. 2d 752, 766-67 (D.N.J. 2008), aff'd, 594 F.3d 238 (3d Cir. 2010)). That holding was rooted in the appellate court's

observation that no New Jersey case had found that an indemnity claim could support a first-party action.  Ibid.

We now find that it is not axiomatic that indemnification is limited only to third-party claims.  Rather, indemnification may also apply to first-party claims if that is the clear intent of the parties as expressed by their deliberate word choices when drafting contracts.  Those word choices will govern whether an indemnification provision supports a first- or third-party claim for damages.

Although this Court has never previously held that a contract should contain express language to permit indemnification of first-party claims, our prior decisions support such a conclusion.  In Kieffer, this Court held that it was possible for a party to a contract to draft a provision for indemnification even for an indemnitee's own negligence, 205 N.J. at 224, but stressed that a provision shifting liability to an "indemnitor must be accomplished only through express and unequivocal language," id. at 225.  In doing so, we acknowledged that the parties were free to contract for indemnification where the indemnitor was found negligent but added that any ambiguity in the terms would defeat indemnification.  Id. at 225-26.  And in exploring whether parties could contract for indemnification based upon one party's own fault, this Court has made clear "that the agreement must specifically reference the negligence

18

or fault of the indemnitee." Azurak v. Corp. Prop. Inv'rs, 175 N.J. 110, 112-13 (2003).

Our case law underscores New Jersey's strong public policy in favor of the freedom to contract, Rodriguez v. Raymours Furniture Co., Inc., 225 N.J. 343, 360-61 (2016), limited in those circumstances where a contract would otherwise violate public policy, Sparks v. St. Paul Ins. Co., 100 N.J. 325, 335 (1985). We therefore decline to endorse the Association's bright-line rule that indemnification applies only to third-party claims. Parties are free to determine whether to extend indemnification provisions to first-party actions or limit them solely to third-party actions.

Nevertheless, given the caselaw discussed above, we encourage parties seeking to permit indemnification of first-party claims to include express language to do so. Otherwise, any ambiguity will continue to be construed against the indemnitee. See Kieffer, 205 N.J. at 223-24.

## IV.

The judgment of the Appellate Division is reversed. Because we hold that the indemnification provision does not cover Boyle's claims, we find it unnecessary to address the remaining questions.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, and WAINER APTER join in JUSTICE NORIEGA's opinion. JUSTICE FASCIALE did not participate.

19