JOHN F. JENNINGS, PLAINTIFF-APPELLANT, *v.* B. JOSEPH PINTO, DEFENDANT-RESPONDENT.

Argued November 6, 1950—Decided November 27, 1950.

*Mr. Raymond F. Brady* argued the cause for appellant.

*Mr. Mordecai Sarbone* argued the cause for respondent (*Messrs. Sarbone & Lordi,* attorneys).

The opinion of the court was delivered by

CASE, J.  Plaintiff sued in the Superior Court to recover liquidated damages on defendant's alleged breach of contract. The court granted a judgment of dismissal at the close of plaintiff's case.  An appeal was taken therefrom by plaintiff to the Appellate Division and comes to us on our own motion.

Plaintiff rented a gasoline service station on yearly lease from Gulf Oil Corporation and owned the business there conducted as well as the goods, chattels and tools thereof. On August 3, 1945, the parties entered into a written agreement, prepared by defendant's attorney, wherein Jennings undertook to sell to Pinto the business with stock and good will, to procure a lease running to Pinto from the Gulf Oil Corporation with terms similar to those of the Jennings lease, to refrain from engaging in the gasoline business within a radius of two miles of the location and not to attempt to solicit the patrons of the business for a period of three years; and Pinto agreed to pay $1,600 forthwith and $100 each

month, for a period of eight years, out of the proceeds of the business. There were these provisions:

> "Said party of the first part agrees that he will procure for the party of the second part from the landlord, Gulf Oil Corporation, a new lease * * * under terms similar to the one now in operation under a lease agreement between Gulf Oil Corporation and the said party of the first part. Under the terms of said lease the Gulf Oil Corporation receives 1½c on each gallon of gasoline sold which at no time is to be less than $150.00 a month. If it should be less, then the lessor must pay the difference. If the party of the first part cannot procure said lease, then these presents, at the option of the party of the second part, may be declared null and void, and the parties hereto shall be discharged from all liability hereunder."
>
> \* \* \* \* \* \* \*
>
> "As to the One Hundred ($100.00) Dollars payable to the party of the first part as mentioned above, the same shall be contingent upon the retention by the party of the second part of the leasehold agreement with the Gulf Oil Corporation. If prior to the expiration of the eight (8) years the Gulf Oil Corporation shall rescind this lease or agreement under its ten day clause which gives them a right to do so, this agreement to pay One Hundred ($100.00) Dollars to the party of the first part shall be void at the option of the party of the second part."

The word "rescind" was not used in the technical sense which implies an act of both parties. *Cf. City of Bridgeton v. Fidelity & Deposit Co.*, 88 *N. J. L.* 645, 650 (*E. & A.* 1915). It was a reference to "the option of terminating" the lease reserved by that instrument to either party on ten days' notice to the other.

After the sale, Jennings went to Florida and there engaged in business. He received the $1,600 as agreed and for a time the sum of $100 monthly. In the latter part of May, 1946, he received a letter, dated May 21, 1946, written on behalf of Pinto, containing a copy of a letter purporting to have been received by Pinto from the Gulf Oil Corporation and also containing the statement that under the terms of the Jennings-Pinto agreement a letter such as the one last mentioned terminated the obligation for monthly payments. The Gulf Oil Corporation letter to Pinto was dated May 18, 1946, and said that in accordance with the clause in the lease

whereby either party could terminate the lease on ten days' written notice the company thereby exercised the option and, effective May 31, 1946, cancelled the lease. Jennings, understanding from those letters that Pinto's right to the occupancy of the service station had terminated and that the latter's right to conduct the business at that stand was at an end, acknowledged the receipt of the correspondence and reminded Pinto that there was due under the agreement, as of May 31st, the sum of $435. Later in the summer Jennings came north and found that Pinto was still doing business at the same location. The Gulf Company had, following the notice of termination, made a new lease with Pinto. It has annually renewed those lease relations continuing up to the present time or, at least, to May 31, 1950, when the record was compiled, and Pinto has, throughout, continued his ownership and operation of the business.

Thus is presented the question whether the letter of May 18, 1946, from the Gulf Oil Corporation to Pinto constituted such an application of the pertinent clause in the Jennings-Pinto agreement as that the trial court was justified in holding, as a matter of law, that Pinto could elect to void his obligation to make further monthly payments. That holding was implicit in the judgment of dismissal.

The agreement between the parties required Jennings to use his influence with the Gulf Oil Corporation to rent the premises to Pinto under terms "similar" to those of the earlier lease which called for the payment of a rental equivalent to 1½c for each gallon of gasoline sold, with a minimum monthly payment of $150. The lease which Jennings used his influence in procuring from the Gulf Oil Corporation to Pinto was made under the same date as was the agreement between the parties, ran as theretofore for a period of one year from a named day to a named day (in this instance from August 4, 1945, to August 3, 1946) with the option to either lessor or lessee to terminate the same by giving not less than ten days' prior written notice, and fixed the rental at the sum of 1½c per gallon as theretofore but with a minimum rental

of $225 a month. That lease was not identical with its predecessor because it increased the minimum monthly rental from $150 to $225. But what the agreement between the parties called for as the controlling element was not repetition of, but similarity in, the terms, and Pinto accepted the lease as consistent with his obligation to take over and to maintain all payments. The parties thereby, to that extent, made their own construction of the word "similar." It was the practice of the Gulf Oil Company to make a rental agreement each year. The lease with Pinto followed that course and provided for a term of one year, and as Pinto bargained to make payments to Jennings month by month for a period of eight years, it may not be said that either Jennings or Pinto expected the life of that particular lease to extend over the entire eight-year period or that there could not be incidental changes warranted by changing conditions, consistent with continued operation and "under terms similar" to the Jennings lease.

The Gulf Oil Corporation letter of May 18, 1946, was, in words, a termination of that first lease; but, clearly, it was not intended to be, and was not, a continuing termination of the relations of landlord and tenant or a termination, or even an interruption, of the business which Pinto had bought from Jennings and was conducting at the leased premises. It was preliminary to a new arrangement which a jury might have found was more favorable to Pinto than was the old. It was for the term of one year from June 1, 1946, to May 31, 1947, at the flat monthly rental of $350 without dependency upon gallons sold. Although that monetary amount was more than the earlier minimum of $225, it could actually have been less than the amount Pinto, because of the volume of the sales, had been obliged to pay on the per gallon basis. Other changes were that the ten-day option clause was omitted and a clause was inserted to the effect that holding over beyond the strict lease term should not be considered a renewal or extension of the lease for any period longer than one month. On May 19, 1947, another lease was executed for the succeeding year, June 1, 1947, to May 31, 1948, on substantially the same

terms except that the monthly rental was increased to $375. On May 7, 1948, that lease was extended from one year from June 1, 1948, to May 31, 1949, on the same terms, and on May 12, 1949, the lease was again extended on the same terms to run from June 1, 1949, to May 31, 1950.

We are led by the construction given by the parties to believe that an increase in the minimum monthly rental was not a conclusive dissimilarity. When Pinto, at the beginning, could have disavowed the whole undertaking upon that ground, he made no protest but proceeded as of course. Later, when with Jennings' intercession he had become established in his relations with Gulf Oil Corporation and with the trade and Jennings was helpless to take over and resume, he met with a change in the conditions of his leasehold, not shown to have been disadvantageous to him, and used it as a ground for renouncing his debt to Jennings although he retained the business which was the consideration for the debt. Appellant condemns that procedure as a fraud. The facts suggest that Pinto was quick to utilize what appeared to be an opportunity to retain the business and at the same time avoid his bargain to pay for it, and that, if he did not conceal, he surely did not divulge the pending plans for a new and favorable letting. But we do not hold, as a matter of law, that there was fraud. On the other hand, we think that the contract provisions may not be so tightly construed as to make them, in point of law, dispositive of the case regardless of the significance of the proofs. Let us suppose that Gulf, having given Pinto the notice of May 18, 1946, had proceeded to make with him a new lease containing the precise terms of the one so terminated. Could it be soundly argued that such an evolution would have served to relieve Pinto of the debt by which he had bought the business? We think not. Pass from supposition to fact. The new lease raised the monthly minimum payment but omitted the per gallon charge and so created, potentially, a lesser rental than before. That new contract, in literal strictness, contained terms different from those of the old; but, seeking the intent of the language in the light

of the objective toward which seller and buyer were working in the drawing of the sale agreement, which obviously was the protection of the buyer against the obligation to continue monthly payments under new and burdensome conditions not similar to the terms which the seller undertook to procure, is it to be decided as a matter of law that the change thus effected was such a termination of the leasehold as came within the agreement and gave Pinto the option to void the remainder of the debt?

It is respondent's narrow construction that the obligation to make the monthly payment was confined to the duration of the first Pinto lease, that the reference was to *the* leasehold, not *a* leasehold, that it was "this" lease—not some other or subsequent lease—which, if the oil company should terminate, would end the obligation to make the monthly payments. The agreement anticipated no such limitation. The "rescission" by the corporate owner might be at any time "prior to the expiration of the eight years." There are passages of doubtful purport, but the instrument is of the defendant's drafting and ambiguities are to be taken most strongly against him. We regard the continuing leasehold, the uninterrupted occupation of the premises and conduct of the business, as the conception which was in the minds of the parties, with the right to Pinto to terminate the payments at any time during the eight years if and when the continuing occupancy should be terminated by Gulf Oil Corporation or the lease conditions imposed by that company should not be "similar" to those of the Jennings lease.

Whether or not, as the case stood, the defendant had the right to terminate the monthly payments depended upon whether the Gulf Oil Corporation by its letter of May 18, 1946, and its new lease made so soon thereafter as to be susceptible of appraisal as a part of the same transaction retained a leasehold agreement with Pinto, the terms of which were "similar" to the last Jennings lease; and the determination of that issue involved questions of fact which should have gone to the jury. While it is a general rule that the construc-

tion of a contract is a question of law for the court, that rule is predicated upon the absence of an issue of fact. Where the effect of a written instrument depends not merely on its construction and meaning but upon disputed collateral facts *in pais* and extrinsic circumstances, the inferences of fact to be drawn therefrom are for the jury's determination. *Edge v. Boardwalk Securities Corporation,* 115 *N. J. L.* 286 (*E. & A.* 1935).

■ There was also a real dispute in the proofs about the amount due from Pinto to Jennings on the date of the attempted voiding of the agreement. That of itself was a matter for the jury.

The judgment below will be reversed and a new trial ordered; costs on this appeal to the appellant.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For affirmance*—None.