**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3708-18T1

IN THE MATTER OF THE
ESTATE OF EDWARD
STEVEN OWENS,
    Deceased.

_____

Argued March 10, 2020 – Decided April 21, 2020

Before Judges Yannotti, Hoffman, and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. P-000200-16.

Derek Scott Fanciullo argued the cause for appellant Jose L. Rodriguez (Matsikoudis & Fanciullo, LLC, attorneys; Derek Scott Fanciullo and William C. Matsikoudis, on the briefs).

Thomas T. Kim argued the cause for respondents Miriam Owens, Madison Avery Owens and Steven Arron Owens (Koulikourdis & Associates, attorneys; Peter John Koulikourdis and Thomas T. Kim, on the brief).

PER CURIAM

The trial court entered an order dated January 18, 2019, which enforced a mediation agreement between the parties. Defendant Jose L. Rodriguez appeals from an order dated March 19, 2019, which denied his motion for reconsideration of the January 18, 2019 order. We affirm.

Edward Steven Owens (Edward) died on August 24, 2012. At the time of his death, Edward was unmarried. Edward had been married to Miriam Owens (Miriam), but they divorced in May 2003. He left a last will and testament, which was admitted to probate by the Surrogate of Bergen County on September 5, 2012.

In the will, Edward made specific bequests to his children, Steven Arron Owens (Steven) and Madison Avery Owens (Madison) and distributed his residuary estate to them in equal shares. Among other things, the will provided that if either child shall be under the age of twenty-seven years, that child's share of the residuary estate would be held in trust. Defendant was designated executor of Edward's estate and trustee of the trusts established for the benefit of Steven and Madison. The Surrogate issued letters testamentary and of trusteeship to defendant.

On June 2, 2016, Steven and Madison (collectively, plaintiffs)[1] filed a verified complaint in the Chancery Division, Probate Part. Among other things, plaintiffs alleged that defendant misappropriated or misapplied estate assets, filed an inaccurate federal tax return for the estate, overpaid federal estate taxes, provided incomplete statements for their respective trust accounts, refused to provide information about the estate's assets, and failed to provide an explanation for apparent withdrawals from the trust accounts. They claimed defendant failed to account for more than $200,000, which they alleged was missing from the estate.

Plaintiffs sought the removal of defendant from his position as executor of the estate and trustee of their respective trusts, and revocation of the letters testamentary and of trusteeship that the Surrogate issued to him. Plaintiffs also sought an order compelling defendant to turn over all financial records pertaining to the estate and the trust accounts, and to produce an inventory of the estate's assets. In addition, they sought an accounting of the estate's assets, along with damages and attorney's fees.

---

[1] The record does not include all of the pleadings; however, it appears that at some point, Miriam Owens became a party to the action. Plaintiffs' attorney is also representing Miriam in this case.

A-3708-18T1

The parties then participated in mediation. The parties were represented by counsel. They reached an agreement on the major outstanding issues in dispute, which were memorialized in a handwritten agreement prepared by the mediator. The parties and their attorneys signed the agreement, which is dated December 28, 2017.

The agreement states that defendant resigns as executor and trustee. It also states that:

> [Defendant] will pay the sum of $165,000 to the trust: [$25,000] by [January 15, 2018]. The balance by a [$140,000] note with interest at [five percent] with payment[s] of [$1,000] a month. There will be a balloon payment [seven] years from this date. [Defendant] will designate this amount ($140,000) from his current insurance policy for the benefit of the trust[s] (or beneficiaries, as the case may be), and provide proof thereof. The amount due shall be set forth in a judgment in favor of the trust but may not be deducted for the amount due less principal payments, until two consecutive default payments. [Defendant] agrees he shall not be able to discharge these financial obligations pursuant to 11 U.S.C. [§] 523(a)(4).

The agreement further provides that the action would be dismissed with prejudice and without costs, and the parties would exchange mutual releases.

In May 2018, plaintiffs' counsel sent defendant's attorney a proposed consent order, which incorporated the terms of the mediation agreement and stated that defendant resigned as executor of the estate and trustee of Steven's

and Madison's trusts. It also stated that defendant shall turn over to plaintiffs all monies in their respective trust accounts, along with the financial records and other information in his possession concerning the estate and the trusts.

The proposed consent order also provided for the appointment of a new executor and trustee. In addition, the order stated:

> The parties agree that the [d]efendant, Jose Luis Rodriguez, shall give the [p]laintiffs any and all monies remaining in their respective Trust Accounts as of December 28, 2017. Additionally, the [d]efendant agrees to pay the [p]laintiffs the sum of [$165,000] to be deposited in their Trust Accounts (50/50 each [p]laintiff) in the form of: a lump sum of [$25,000] by January 15, 2018. The remaining balance of [$140,000] shall be paid at a fixed annual percentage rate of 5.00% with payments of [$1,000] per month, made payable to [p]laintiffs' Trusts. The parties agree that the [d]efendant Jose Luis Rodriguez will have a balloon payment due on December 28, 2024, in the sum of $98,372.67 pursuant to the amortization scheduled attached hereto as Exhibit "J-2".

Attached to the consent order was a loan summary, which calculated the amount due with interest at a rate of five percent, amortized on a monthly basis. According to the loan summary, there would be monthly payments of $1,000 for eighty-four months, and the final payment due in December 2024 would be $97,964.48.

5

On June 27, 2018, plaintiffs' counsel wrote to defendant's attorney. He noted that despite several requests, he had not received the required proof that defendant had designated $140,000 from his insurance policy for the benefit of the trusts, and the proposed consent order had not been executed. He stated that it appeared the parties "are at a standstill regarding the issue of counsel's fees." He asked defendant's attorney to have defendant execute the proposed consent order. Plaintiffs' counsel stated that if defendant refused to do so, he would be "left with no choice but to file" a motion to enforce the agreement and seek counsel fees and costs. Defendant did not execute the consent order or provide proof that he had designated $140,000 of his insurance policy for the benefit of the trusts.

On August 29, 2018, plaintiffs filed a motion for enforcement of the mediation agreement, and for attorney's fees and costs. They alleged defendant had not: executed the consent order provided to his attorney, provided the required proof regarding his insurance policy, or turned over bank statements regarding the trust accounts.

Among other relief, plaintiffs sought an order declaring that all provisions of the agreement shall go into effect immediately, compelling the parties to comply with the agreement, requiring defendant to resign as executor and

trustee, and directing defendant to immediately change his life insurance policy to designate $140,000 for the benefit of the trusts, with proof of that change.

Defendant opposed the motion. He filed a certification stating that he had arranged for the designation of plaintiffs as beneficiaries of his life insurance policy in the amount of $140,000. He also stated that he was ready and willing to comply with the mediation agreement, but claimed plaintiffs were misinterpreting the provision of the agreement pertaining to the payment of the $140,000. He claimed he agreed to pay plaintiffs a total of $165,000, but plaintiffs' calculation "brings the payments" to more than $200,000.

Defendant asserted that the mediator told him the final payment in year seven would be $56,000. He noted that under the agreement, the first payment was $25,000, and thereafter he would make monthly payments of $1000 per month for eighty-four months and a final payment of $56,000, for a total of $165,000.

The motion judge met with counsel and thereafter entered an order dated October 19, 2018, which required the parties to return to mediation within forty-five days "to determine the scope and applicability" of the provision of the agreement pertaining to the five percent interest on the balance of $140,000,

which is to be paid over time. The order noted that the issue regarding defendant's insurance policy had been resolved.

Thereafter, plaintiffs' counsel wrote to the mediator and stated that there was a dispute regarding the application of the five percent interest on the $140,000 which is to be paid in monthly installments. Plaintiffs' counsel asked the mediator to clarify or provide an interpretation regarding the amortization of the interest on the payments. Counsel stated that, upon receipt of that clarification or interpretation, he and defendant's attorney were prepared to return for another mediation session, if necessary.

On November 5, 2018, the mediator replied in an email and stated that he had been unsuccessful in setting up a telephone conference. However, the mediator provided his "review" of the provisions of the agreement "respecting payments." He stated that:

> The debt cited in the [December 28, 2017] settlement sheet ($140,000) carries [five percent] interest that is amortized on the basis of a $1,000 a month payment, but which becomes due [December 28, 2024] when a balloon payment is due and pays off the then existing balance. You can produce an amortization schedule from a number of app[lications] on the internet. For example, when the first monthly $1,000 payment is made, the interest [at five percent] is $583.33 and so the principal payment is $416.67. The next month's payment is allocated $581.60 to interest and $418.40 to principal, and so on.

A-3708-18T1

Plaintiffs' counsel sent the mediator an email thanking the mediator for his response. He enclosed the amortization schedule that he had previously provided to defendant's attorney and asked the mediator "if it accurately summarize[d] the payment schedule." The mediator responded in an email. He stated that "[t]he schedule you provided is as I described it." Plaintiffs' counsel then asked defendant's attorney if he would join him in advising the court that the issue regarding the interest had been "clarified." Defendant's attorney did not respond.

On December 31, 2018, plaintiffs filed a motion to enforce the mediation agreement. Defendant opposed the motion. The motion judge heard oral argument and entered an order dated January 18, 2019, enforcing the agreement. The order required defendant to make payments in accordance with the amortization schedule that plaintiffs' counsel had provided to defendant's attorney.

Thereafter, defendant filed a motion for reconsideration. He argued that his total liability was $165,000 and the five percent interest was built into the monthly payments. The judge heard oral argument on March 8, 2019, and filed an order dated March 19, 2019, denying the motion.

In the attached statement of reasons, the judge rejected defendant's contention that the interest was built into the total liability of $165,000. The judge found the terms of the agreement were clear and unambiguous and there was no indication the parties intended the monthly payments would encompass the interest. The judge wrote, "To the contrary, the settlement agreement explicitly calls for a [five percent] interest rate on the [$140,000] note on top of the [$25,000 initial] payment."

The judge noted that, at oral argument on the motion, defendant's attorney essentially had conceded defendant owed plaintiffs $165,000 and the judge rejected defendant's contention that the parties agreed defendant would have a seven-year, interest-free payment plan. The judge commented that defendant's argument would make some sense if the parties had agreed defendant owed an amount significantly less than $165,000.

The judge wrote that defendant's contention that the parties agreed to an interest-free, seven-year payoff "is entirely inconsistent with the terms of the agreement, which explicitly reference a [five percent] interest rate on the $140,000.00 note, in addition to a balloon payment due in seven years." The judge noted that the mediator had provided a further clarification and

interpretation of the agreement, which confirmed that plaintiffs' amortization schedule was consistent with the agreement.

The judge added that there was no reason the matter should be drawn out further to allow defendant to return to mediation "for the sole purpose of telling" the mediator and reporting back to court that he is dissatisfied with the mediator's interpretation of the agreement. The judge concluded that defendant had not met the high standard for reconsideration of the order enforcing the agreement. This appeal followed.

On appeal, defendant argues that the March 19, 2019 order denying reconsideration should be reversed. He contends the judge erred by considering the statement of the mediator, which was not permitted by Rule 1:6-6. He argues that the judge disregarded credible evidence, the mediator's statement violated New Jersey law, and the order requiring him to make payments in accordance with the amortization schedule should be vacated. Defendant contends that, at a minimum, the matter should be remanded to the trial court for a plenary hearing.

"Motions for reconsideration are governed by Rule 4:49-2, which provides that the decision to grant or deny a motion for reconsideration rests within the sound discretion of the trial court." Pitney Bowes Bank, Inc. v. ABC Caging

Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). Reconsideration is only appropriate in those cases "that fall within that narrow corridor in which either (1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Capital Fin. Co. of Delaware Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (alterations in original) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

On appeal, "a trial court's reconsideration decision will be left undisturbed unless it represents a clear abuse of discretion." Pitney Bowes Bank, 440 N.J. Super. at 382 (citing Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994)). "An abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Ibid. (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

The construction of a contract is a question of law. Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011) (citing Jennings v. Pinto, 5 N.J. 562, 569-70 (1950)). We review the trial court's interpretation of a contract de novo. Id. at 222 (citing Jennings, 5 N.J. at 569-70). Furthermore, "[a] trial court's

interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995).

When construing a contract, our objective is to determine the intent of the parties. Kieffer, 205 N.J. at 223 (citing Mantilla v. NC Mall Assocs., 167 N.J. 262, 272 (2001)). Generally, we give the terms of a contract their plain and ordinary meaning. Ibid. (citing M.J. Paquet, Inc. v. N.J. Dep't of Transp., 171 N.J. 378, 396 (2002)). The court should not under the guise of interpretation make for the parties a different or better contract than they have made for themselves. Ibid. (citing Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001)).

Here, the trial court found the relevant provision of the mediation agreement is clear and unambiguous. As noted, the agreement requires defendant to make an initial lump sum payment of $25,000, and to pay the remaining $140,000 "with interest at [five percent]" in monthly installments of $1000 for seven years, along with a final balloon payment. As the motion judge pointed out, the terms of the agreement do not support defendant's claim that he is only required to pay a total of $165,000, and that this amount includes interest at five percent.

In his statement of reasons, the judge noted that there is nothing in the agreement which suggests the parties agreed defendant would pay the balance of $140,000 in monthly installments over seven years without any interest. There is also nothing in the agreement indicating that the parties agreed defendant would only be required to pay $165,000, and that the $165,000 included interest at five percent.

Indeed, as the judge pointed out, at oral argument, counsel for defendant conceded that defendant's accountant had determined defendant owed the plaintiffs $165,000. The judge observed that defendant's argument might make sense if the parties had agreed defendant owed plaintiffs substantially less than $165,000. There is no indication that they reached such an agreement.

Thus, the record does not support defendant's contention that he would have a seven-year, interest-free loan of $140,000. If that is what the parties intended, the agreement would have explicitly stated that the $140,000 would be paid in monthly installments, without any additional interest.

Defendant contends that the motion judge erred by failing to consider his contention that the mediator told him the balloon payment would only be $56,000. He also contends the related provision pertaining to his insurance

14

policy shows that the parties agreed his total liability would be $165,000, and he would not have to pay interest on the $140,000.

However, there is nothing in the agreement which states that the parties agreed defendant's balloon payment would only be $56,000. The plain terms of the agreement reflect that the balloon payment would consist of the unpaid balance with interest at the agreed-upon rate of five percent.

Moreover, while the parties agreed to allocate only $140,000 of defendant's life insurance policy for the benefit of the trusts, that provision does not support the contention that defendant had no obligation to pay interest on the balance due over a seven-year period. To the contrary, the agreement expressly provides for $140,000 in monthly installments, over a seven-year period, "with interest" at five percent.

Defendant further argues that the motion judge erred by considering the mediator's statements clarifying the agreement. Defendant contends plaintiffs' counsel improperly included those statements in the certification he filed in support of the motion to enforce the agreement. He contends the mediator's statements regarding the interpretation of the agreement and the amortization schedule were inadmissible hearsay. He also contends the mediator's statements

15

were not permitted under the Uniform Mediation Act, N.J.S.A. 2A:23C-1 to -13.

We need not address these arguments. We are convinced that even if the trial court erred by considering the mediator's comments regarding the agreement and the amortization schedule, the error was harmless. As we have explained, the motion judge chose to enforce the agreement in accordance with its plain language and the record supports that determination.

Where, as here, the terms of a contract are clear and unambiguous, there is no room for interpretation and the court must enforce the agreement as written. Schor v. FNS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002) (citing Karl's Sales and Serv., Inc. v. Gimbel Bros. Inc., 249 N.J. Super. 487, 493 (App. Div. 1991)). The mediation agreement plainly requires defendant to pay interest at five percent on the outstanding $140,000, and the amortization schedule provided by plaintiffs was entirely consistent with that obligation.

Whether the mediator agreed or disagreed with this interpretation of the agreement is of no moment. The issue was one for the court to resolve as a matter of law, and it did so correctly. We conclude the trial court did not mistakenly exercise its discretion by denying defendant's motion for reconsideration.

We have considered defendant's other arguments and conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3708-18T1