**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0551-18T2

THE PROVIDENT SAVINGS BANK,

    Plaintiff-Appellant,

v.

AMY S. POULIOT,

    Defendant-Respondent.

_____

           Argued September 12, 2019 – Decided July 21, 2020

           Before Judges Alvarez, Nugent and Suter.

           On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-10197-94.

           Nicholas Morgan Gaunce argued the cause for appellant (Eckert Seamans Cherin & Mellott, LLC, attorneys; Nicholas Morgan Gaunce, of counsel and on the briefs).

           Bradley L. Rice argued the cause for respondent (Nagel Rice LLP, attorneys; Jay J. Rice and Bradley L. Rice, of counsel and on the brief).

PER CURIAM

This appeal involves plaintiff Provident Savings Bank's attempt to execute on a twenty-four-year-old, narrowly framed consent judgment against defendant, Amy S. Pouliot, who three decades ago provided a carefully restricted guaranty of loans Provident made to her ex-husband. Provident appeals an order that denied its motion seeking a writ of execution, a prohibition against further transfer of trust assets from the Amy Sagner Pouliot Management Trust (the "ASP Management Trust"), and leave to levy on trust assets. The same order granted, with the sole exception of assets contributed by Gregory C. Pouliot, Amy's ex-husband, Amy's cross-motion for a declaration the assets of the ASP Trust were immune from execution. We affirm.

The material facts the parties presented on the motion record provide the following background information. Amy has suffered since childhood from a debilitating disease that, among other impairments, makes it impossible for her to hold a job or drive a car. The daughter of wealthy grandparents and parents, Amy has maintained herself and her lifestyle from funds from trusts created by her grandparents and parents.

Amy married in 1977. She and her husband, Gregory, divorced in 2005. Provident's consent judgment against Amy stems from loans Provident made to Gregory's real estate business.

Beginning in 1988, Provident and other banks began loaning money to Gregory's real estate company, Pouliot, Inc. Three such loans from Provident totaled $1,790,000. The loans were secured by real property owned by the business and by Gregory's personal guaranty. In 1990, Pouliot, Inc. defaulted on the loans. Provident agreed to modify and consolidate the loans in the principal amount of $1,875,000, provided both Gregory and Amy personally guaranteed repayment.

Amy's father, who had prior business relationships with some of the banks that had loaned money to Pouliot, Inc., would not allow Amy to execute a guaranty that would jeopardize funds Amy would receive directly or indirectly from any trust set up for her benefit. Yet, Amy's father understood the bank's concern that if Pouliot, Inc. defaulted, Gregory might attempt to transfer assets to Amy to avoid Provident's collection efforts. For that reason, Amy's father agreed to allow Amy to sign the loan documents as a guarantor but required the banks to agree that collection efforts would be limited to only monies Amy received from Gregory.

The guaranty Amy executed stated in pertinent part:

> The Bank shall not seek payment from any principal or income derived from any trust funds established for Amy Pouliot by parties other than Gregory C. Pouliot

3

or from any future inheritance received by Amy Pouliot from parties other than Gregory C. Pouliot.

Later that decade, Pouliot, Inc. and Gregory declared bankruptcy. Provident filed two actions: a foreclosure action against the three properties that secured the loan, and an action on the promissory note that Amy had guaranteed, though Provident sued on the basis of a commitment letter rather than the guaranty itself, which Provident had apparently lost or misplaced. The parties negotiated a settlement and entered into a consent judgment that provided:

> This matter having been [sic] come on for Trial before the Court on December 18, 1995, and the parties having advised the Court that the matters between them had been settled and would be the subject of a Consent Judgment, the terms of which were to be arrived at by the parties, and the parties having reviewed the proposed Form of Judgment and consented to the Form and Entry thereof, and for good cause appearing;
>
> IT IS ON THIS 28th day of March, 1996,
>
> ORDERED that Judgment is hereby entered in favor of the plaintiff Provident Savings Bank and against the defendant Amy S. Pouliot in the amount of $1,503,384.07 as of February 13, 1996; and it is further
>
> ORDERED that the plaintiff shall not exercise any remedy arising under this judgment against any principal or income of defendant Amy S. Pouliot, which had been derived from Trusts set up for her benefit by parties other than Gregory C. Pouliot, nor may the plaintiff exercise any remedy arising under this judgment on any future inheritance received by Amy S.

A-0551-18T2

Pouliot from parties other than Gregory C. Pouliot; and it is further

ORDERED that the defendant Amy S. Pouliot. shall be given a credit against the amount due on this judgment for all monies, net of expenses, collected after November, 1995 by the plaintiff from the sale of properties, which were collateral for the loan guaranteed by defendant, Amy S. Pouliot.

For several years following the entry of the consent judgment, Provident periodically undertook discovery to determine whether Amy possessed any assets subject to execution, but found none. Provident did nothing about the judgment from 2000 through 2016. In 2016, Provident renewed the judgment. Thereafter, the bank undertook collection efforts and filed the motion that culminated with the order from which this appeal is taken.

Following renewal of its judgment, for more than a year, Provident issued subpoenas and obtained documents from Amy, her banks, her credit card issuers, and her investment managers. Provident also subpoenaed documents from fiduciaries of the trusts, title agents, and attorneys. During the time Provident was aggressively pursuing discovery of Amy's assets, Amy deposed Provident's corporate designee, a person who was not involved in negotiating the loan Amy guaranteed, Amy's guaranty, or the consent judgment.

5

In 1998, the structure of the trusts changed. Based on the advice of his financial advisors, lawyers, and trustees, Amy's father decided the trust he had set up for Amy as part of his estate planning strategy was unnecessarily complex. Amy's father was advised that, to the extent possible, all trusts should be "decanted" to make administration easier and more cost effective. Following that advice, Amy's father and his advisors began a process to "decant" the trust assets into a single "management trust" that would serve as Amy's primary source of income.

Based on additional advice from numerous professional consultants, the process of "decanting" required transferring assets from trusts in which Amy was named a beneficiary to Amy herself to permit her to serve as the settlor of the ASP Management Trust. Thus, the assets in the ASP Management Trust were derived from other trusts and assets that Amy's father and other family members had established for Amy's benefit. Funds in the ASP Management Trust included money from Amy's father used by the trust to purchase a New York City apartment in which Amy resides.

Under the ASP Management Trust Agreement, determinations regarding the management of trust assets and payments of trust principal and income to

A-0551-18T2

Amy are made by the trustees. Amy has no authority to appoint or remove trustees by herself.

Against this backdrop, the parties filed the motion and cross-motion which are the subject of this appeal. Denying Provident's motion seeking a writ of execution, a prohibition against further transfer of trust assets, and leave to levy on trust assets, the trial court determined the consent judgment was negotiated between "sophisticated parties and sophisticated attorneys" and the terms "couldn't be any clearer." The court interpreted the consent judgment as subjecting assets in the ASP Management Trust to execution only when they were contributed by Amy's ex-husband, Gregory. The court also determined the consent judgment did not "exclude her doing something with a trust, [or] a sister, [or] a father." It further found there was no proof the "funds [plaintiff was] seeking to levy on . . . are in any way shape or form related to monies that Gregory, her . . . ex-husband, was involved with."

The court directed the parties to submit a proposed order. Provident objected to Amy's proposed order, arguing the order would be "premature" because "[p]rior to August 21, 2018, [defendant] never indicated that Gregory C. Pouliot was the center of her exemption defense." Consequently, it would be wrong to immunize assets currently held in the ASP Management Trust because

Provident had not been afforded the opportunity to procure trust records concerning possible assets contributed by Gregory. The court rejected Provident's argument and granted Amy's cross-motion except for assets contributed by Gregory. This appeal followed.

On appeal, Provident first argues the trial court applied the wrong standard of review and improperly placed on Provident the burden of proof concerning affirmative defenses Amy asserted. Next, Provident argues the trial court failed to interpret the terms of the consent judgment according to their plain meaning. Provident contends the court compounded this error by failing to consider extrinsic evidence to illustrate the judgment's terms. Provident adds that, at best, the language in the consent judgment is ambiguous, and thus extrinsic evidence should have been considered to resolve the ambiguity. Last, Provident contends the trial court erred by entering the order without first affording Provident the opportunity to take discovery from Gregory.

Our analysis of Provident's arguments is guided by settled legal principles. Rule 4:40-1(d) authorizes consent judgments. A consent judgment has been characterized as "both a contract and a judgment[;] it is not strictly a judicial decree, but rather in the nature of a contract entered into with the solemn sanction of the court." Midland Funding, LLC v. Giambanco, 422 N.J. Super.

301, 310 (App. Div. 2011) (alteration in original) (quoting Stonehurst at Freehold v. Twp. Comm., 139 N.J. Super. 311, 313 (Law Div. 1976)).

Because the construction of a contract generally presents a question of law, the interpretation of a contract's terms "is subject to de novo review by an appellate court." Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011) (citing Jennings v. Pinto, 5 N.J. 562, 569-70 (1950)). The terms in a contract must be given their "plain and ordinary meaning." Id. at 223. Whether a term is clear or ambiguous is a question of law. Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997). When the terms of a contract are clear, the court must enforce them as written. E. Brunswick Sewerage Auth. v. E. Mill Assocs. Inc., 365 N.J. Super. 120, 125 (App. Div. 2004). "The court will not make a different or a better contract than the parties themselves have seen fit to enter into." Wash. Constr. Co. v. Spinella, 8 N.J. 212, 217 (1951).

However, evidence of the circumstances is always admissible in aid of the interpretation of an integrated agreement even when the contract is free from ambiguity. Conway v. 287 Corp. Ctr. Assocs., 187 N.J. 259, 269 (2006). "Such evidence is adducible only for the purpose of interpreting the writing—not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning of what has been said." Ibid. Thus, "[t]he judicial

A-0551-18T2

interpretative function is to consider what was written in the context of the circumstances under which it was written, and accord to the language a rational meaning in keeping with the expressed general purpose." Ibid. (quoting Atl. N. Airlines v. Schwimmer, 12 N.J. 293, 301-02 (1953)).

We have considered Provident's arguments in light of these legal principles and the motion record and we find them unpersuasive. In its first argument, Provident's point of departure is that assets in self-settled trusts are subject to execution by general judgment creditors. Provident reasons from this proposition that a party attempting to shield assets from execution must carry the burden of proving an exemption. Characterizing Amy's argument as an "exemption defense," Provident argues the trial court improperly placed the burden on Provident to show an asset was exempt. Provident contends that because Amy failed to establish the trust funds used to purchase the New York City apartment were exempt assets, that money should be subject to execution.

We begin our analysis with the following preliminary observations. First, Provident's assertion the trial court "clearly applied the wrong burden of proof" is unsupported by any reference to the record or to the words the judge used when purportedly placing the burden on Provident.

Next, we note Provident's first argument is made with virtually no reference to the lengthy history of Amy's interaction with Provident, which began decades earlier when she provided a carefully circumscribed guaranty of Gregory's debt, and which later resulted in the consent judgment at issue here. Consequently, the analytical point of departure was that identified by the trial court, namely, the parties' consent judgment.

Last, we note Amy presented on the motion record voluminous documents and certifications which demonstrated the source of trust funding as well as substantial unrefuted evidence that Gregory contributed nothing toward the trust funds.

In view of these observations, we reject Provident's argument that the trial court somehow shifted the burden of proof to Provident. Rather, the trial court properly undertook the task of determining whether the terms of the consent judgment were ambiguous and what the parties intended by these terms.

Moreover, because our standard of review is de novo, even if the trial court had applied the wrong standard of review, that error would have little or no relevance to the issues the parties raise on this appeal. Accordingly, we turn to Provident's second argument, that the trial court misinterpreted the language in the consent judgment. We disagree.

11

Provident argues the court misconstrued the following underscored language in the consent judgment:

> [Provident] shall not exercise any remedy arising under this judgment against any principal or income of defendant Amy S. Pouliot, which had been <u>derived from Trusts</u> set up for her benefit by parties other than Gregory C. Pouliot, nor may [Provident] exercise any remedy arising under this judgment on any <u>future inheritance</u> received by Amy S. Pouliot from parties other than Gregory C. Pouliot.

Provident emphasizes the key word is "derived." Provident asserts the term "means that assets in the [ASP] Management Trust are immune from execution so long as the source of the assets within the trust derive from trusts or inheritance for Amy's benefit." We agree with the trial court that this argument is creative but unpersuasive. Nothing in the consent judgment restricts the source of trust principal. Nor does the consent judgment limit the trusts solely to the ASP Management Trust. As the trial court explained, the consent judgment's language does not "exclude [Amy] doing something with a trust, a sister, a father, it seems to narrow it down to Gregory, her husband." The court added that no language in the consent judgment barred or restricted Amy's family members from contributing additional principal to the Management Trust. Further, as Amy points out, Provident's creative interpretation of the

12

consent judgment's language would nullify the limitations. Trusts must be funded from external sources when they are created.

Provident argues the trial court compounded its error by failing to consider extrinsic evidence. Amy contends resort to extrinsic evidence is unnecessary when the terms of a document are unambiguous and the meaning of those terms are clear, as is the case with the consent judgment.

It bears repeating that even when the terms of a contract are not ambiguous, "[e]vidence of the circumstances is always admissible in aid of the interpretation of an integrated agreement." Conway, 187 N.J. at 269 (quoting Schwimmer, 12 N.J. at 301-02). The extrinsic evidence presented on the trial record, however, overwhelmingly supports Amy's argument concerning the scope of assets exempted by the consent judgment.

Extrinsic evidence may "include consideration of the particular contractual provision, an overview of all the terms, the circumstances leading up to the formation of the contract, custom, usage, and the interpretation placed on the disputed provision by the parties' conduct." Ibid. (quoting Kearny PBA Local #21 v. Town of Kearny, 81 N.J. 208, 221 (1979)). Significantly, "[s]uch evidence is adducible only for the purpose of interpreting the writing—not for the purpose of modifying or enlarging or curtailing its terms, but to aid in

determining the meaning of what has been said." Ibid. (citing Schwimmer, 12 N.J. at 301-02). "The judicial interpretive function is to consider what was written in the context of the circumstances under which it was written, and according to the language or rational meaning in keeping with the expressed general purpose." Ibid. (citing Schwimmer, 12 N.J. at 301-02).

In applying these principles, we note the corporate representative produced by Provident for a deposition had nothing to do with, and no knowledge of, the intent of Amy, her father, and Provident when Amy provided a narrowly circumscribed guaranty of Gregory's loan decades ago. Nor did Provident's corporate representative participate in or have any personal knowledge of either the litigation that resulted in the consent judgment or the consent judgment itself. In short, Provident's representatives are advocating a position without support from the extrinsic evidence that provides contemporaneous context for the decades-old transaction.

In contrast, Amy has produced the deposition of her father, albeit in a lawsuit involving another bank, taken in October 1991. Significantly, Amy has also produced the certification of the attorney who began representing Amy's father and his affiliated entities in the 1980s. The attorney represented Amy in Provident's 1995 lawsuit that culminated in the consent judgment. The

A-0551-18T2

attorney's certification, which provided evidence of the context in which the consent judgment was signed and of the parties' intent at that time, is refuted by no direct evidence submitted by Provident. Rather, Provident's arguments are based on the belief of a corporate representative with no knowledge of either the context of relevant transactions or the intent of the parties who participated in those transactions.

In short, extrinsic evidence refutes Provident's arguments and establishes, as the trial court found, the consent judgment exempts trust assets and inheritances except those contributed by Gregory.

Except for the following brief comments, Provident's remaining arguments are without sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E). Provident argues the trial court abused its discretion by not affording Provident the opportunity to take discovery from Gregory. Provident did not seek discovery from or concerning Gregory until it lodged an objection to Amy's proposed consent order following oral argument on the motion and cross-motion. Specifically, in its letter objecting to Amy's proposed order, Provident believed it was entitled "to explore the relationship of Gregory . . . to [Amy's] management trust . . . from the time period of January 1, 1999 through December 31, 2009 and transactions related to their divorce."

Provident's "belief" it was entitled to "explore" a relationship that existed for a period that ended more than ten years ago demonstrates an attempt to embark on what is commonly characterized as a fishing expedition. We note that Rule 4:59-1(f) allows a judgment creditor to examine any person "[i]n aid of the judgment or execution." Provident has had years to explore any relationship Gregory had with Amy and any of the trusts in which she has benefited over the years. The trial court certainly did not abuse its discretion in denying Provident's informal application, made in the context of an objection to an order, by persons who had no firsthand knowledge of either the context in which the consent judgment arose or the intentions of the parties who agreed to is terms. The trial court acted well within its discretion by prohibiting further discovery.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0551-18T2